THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES LIAPIS, Defendant-Appellant.

(No. 55068;

First District—February 9, 1972.

Patrick A. Tuite, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Tereance J. Mahoney, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

Defendant, James Liapis, was indicted on two counts for the crime of arson. After a jury trial in the Circuit Court of Cook County, the defendant was found guilty on both counts and the court imposed a sentence of one to five years in the Illinois State Penitentiary.

The issues presented on appeal are: whether there is sufficient proof in the record to sustain the conviction; whether the defendant was prejudiced by the introduction of certain evidence; whether the State proved Count I as alleged in the indictment; whether the court sufficiently instructed the jury as to Count II of the indictment; whether the defendant was prejudiced by remarks made in the State's closing argument; and whether the defendant was prejudiced by the attempts of the prosecutor to introduce certain evidence as to the marital status of the defendant.

In March, 1967, the defendant, James Liapis, and his brother, William Liapis, agreed to purchase stock in K & R Enterprises, Inc., from Ted Revell. The main asset of K & R Enterprises was the Redwood Restaurant located at 4022 South California, Chicago.

Defendant and his brother entered into an agreement with Mr. Revell by which they made an initial down payment composed of cash which they had saved and loans which they had procured from various sources. The remaining amount of the purchase price was to be paid over a certain period of time. During this period of payment, the stock was to be held by an attorney who represented both sides in the transaction. In addition to making payments under the sales agreement, the defendant

and his brother also were to make payments on the loans which they had procured to complete the down payment. At the trial testimony was presented to show that payments on these loans made to the defendant and his brother were being made regularly and on time.

Prior to the purchase by defendant and his brother, the restaurant had fire insurance coverage under eight different policies amounting to $48,000.00. The new owners assumed responsibility on those policies.

During the course of the trial it was established that defendant and his brother operated the restaurant for two months, April and May, 1967. It was generally agreed by all witnesses that William Liapis handled the financial matters of the business and the defendant handled the manual labor, that is, the cooking and cleaning.

For the two months the defendant and his brother operated the restaurant there was a slight profit. More specifically, the figures show a profit for the month of April. The figures for May, however, reflect a loss.

On the night of May 31, 1967, the defendant closed the restaurant at approximately 11:30 P.M. Sandra Matthews, employed at the restaurant as a waitress, testified she left the restaurant at 11:30 P.M. and waited outside for a bus for about ten minutes. While she waited for the bus, Miss Matthews stated the defendant remained in the restaurant alone for a short while, he then came out, locked the restaurant, got into his car and drove away. This was approimatxely 11:40 P.M. Miss Matthews then boarded her bus which had come along and proceeded home.

A fire alarm was received by the Englewood Fire Alarm Office at 11:43 P.M. Firemen arrived at the scene shortly thereafter and found the premises engulfed in smoke. The pressure of the smoke was relieved by breaking a plate glass window on the south side of the restaurant and by cutting a hole in the roof. A fire was observed above the hood of the stove. The firemen pulled down plaster from the ceiling around the stove, above the hood, to see if there was more fire. There was a drop ceiling, fully plastered over wire mesh, as shown in a picture admitted into evidence, and as they pulled the ceiling down there was a faint odor of gasoline. On inspection the firemen found an oil can sitting on the floor of the drop ceiling above the stove; the can was about ½ to ¾ full of an amber liquid. A chemist from the Chicago Police Department stated he later tested the can and that it contained a mixture similar to gasoline. No one, however, attempted to explain the presence of the can, sealed in by a plaster ceiling and not discovered until the ceiling was torn down by the firemen. Obviously the can was there before the ceiling was plastered, for it could not have been placed there and plastered over in a few minutes. The can was not afire, and no one tried

to claim the oil can was part of, or was used in the fire. All this was left to speculation, which is not competent evidence.

Another fire was located on the shelf in a room where canned goods were stored. In the opinion of an arson investigator for the Chicago Fire Department, these were two separate fires. He also stated that the fire in the storeroom appeared to be of incinerator origin, that is, initiated by human origin. A picture of this shelf, in evidence, shows about twelve square inches of charred wood, but there is no debris, such as rags, papers and the like, to indicate starting of a fire.

Defendant Liapis contends he was prejudiced by the introduction of certain evidence not connected with him or the fire. This is a case based on circumstantial evidence. The defendant denied any knowledge of the fire.

At the trial, testimony was heard concerning the oil can which was found by the firemen in the ceiling of the restaurant. Testimony was also admitted which established the contents of the can as a substance similar to gasoline. Photographs were admitted which showed the relative position of the can in that area of the ceiling where the fire had occurred. There was no connection shown, however, between the oil can or its contents and the fire. Nor was any connection shown between the can or its contents and the defendant.

■■■ The Illinois Supreme Court has held that physical evidence must be connected with both the crime and the defendant to be admissible in a criminal trial. (*People v. Jones* (1961), 22 Ill.2d 592.) Since there was no connection in the instant case making the oil can or its contents relevant as evidence to the crime alleged or to the defendant, we agree that it was prejudicial error for the trial court to allow testimony concerning the oil can and its contents. Furthermore, the oil can was marked as an exhibit at the trial for the purpose of identification; however, it was not offered into evidence. As previously stated, it was shown to a police chemist on the witness stand, who testified he had received it from the 9th District Police and analyzed its contents. There was no evidence that the can examined by the police chemist in the crime laboratory was the same can found at the scene of the fire. Nor was it shown that there was an unbroken chain of possession between the oil can which was found in the ceiling and the oil can which was analyzed at the crime lab.

■■ In numerous cases, the Illinois Supreme Court has held that there must be an unbroken chain of possession established between the article seized and the article analyzed. (*People v. Maurice* (1964), 31 Ill.2d 456.) It was error by the trial court to admit as evidence testimony concerning the analysis of the contents of the can since an unbroken chain

of possession was never established, and the can was not admitted into evidence.

■■ Defendant contends that he was further prejudiced by the inflammatory remarks of the prosecutor in his closing argument. In his closing argument, the prosecutor attempted to discredit the testimony of a defense witness, Constantine Kangles, an attorney, former Master in Chancery in the Circuit Court of Cook County, and former advisory counsel to the Small Business Administration of the United States by appointment of two Presidents, who testified as to the running of a small business and also to defendant's good character. The prosecutor referred to Mr. Kangles in his closing remarks as "politically powerful." Such a slur was totally unwarranted and infers political influence in the case. Mr. Kangles had served both the United States and the Circuit Court in positions of trust, with distinction, and to inject a political note into this case because of his service was highly unfair to the defendant. The statement of the prosecutor was not only unjustified but also highly prejudicial.

■■ Finally, defendant contends he was prejudiced throughout the trial by attempts of the prosecution to introduce evidence of immoral conduct by the defendant. The prosecution continually attempted to introduce evidence as to the marital status of the defendant by referring to a pending divorce and his possible running around with women, none of which has any bearing on the fire. We agree that a defendant's guilt must be established "by legal and competent evidence, uninfluenced by bias or prejudice raised by irrelevant evidence, or by unjustified aspersions or insinuations tending to inflame the minds of the jury." (*People v. Wilson* (1948), 400 Ill. 461, 481.) It is also clear the prosecution may not bring forth evidence having no tendency to prove the issue being tried, which only serves to cause the jury to believe a defendant to be a bad, cruel or evil person, and hence likely to be guilty of the crime charged. Evidence of this nature has been repeatedly and consistently condemned. *People v. Lewis* (1923), 313 Ill. 312; *People v. Newman* (1913), 261 Ill. 11.

Evidence such as the prosecution attempted to introduce has no tendency to prove the issues being tried in the instant case. In light of this, we see the attempts of the prosecution to introduce such evidence as highly prejudicial.

It is the opinion of this court that due to those elements of prejudicial error present in the instant case, the defendant, James Liapis, did not receive a fair trial and is entitled to a new trial.

In view of our conclusions on the points discussed, it is unnecessary

to comment on the remaining issues presented for review by the defendant.

For the reasons stated herein, this cause is reversed and remanded to the Circuit Court of Cook County for a new trial.

Reversed and remanded.

BURMAN and ADESKO, JJ., concur.