THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THOMAS WHITE, Defendant-Appellant.

Second District   No. 76-129

Opinion filed September 8, 1977.

Ralph Ruebner and Joshua Sachs, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry Dondanville, State's Attorney, of Geneva (Phyllis J. Perko and Barbara Preiner, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

The defendant, Thomas White, was charged with two counts of armed robbery and one count of attempted murder. After his first trial resulted in a mistrial because the jury could not agree, he was convicted on a second jury trial of all three charges and sentenced to concurrent terms of 10 to 20 years in the penitentiary.

On appeal defendant contends: (1) that improper cross-examination and argument by the prosecutor denied him a fair trial; (2) that the court erred in admitting into evidence defendant's inculpatory statements made during police interrogation after he had requested counsel; and (3) that the court erred in instructing the jury on the issue of accountability.

On May 10, 1975, at approximately 11 p.m., Mr. and Mrs. Milton Hecht arrived at the Elgin Moose Club, parking their vehicle in a lot located at the rear of the club. It was a damp, misty evening but the lot was well-illuminated by lights located on or near the club. Mrs. Hecht got out the passenger side and approached the steps leading down to the building. Mr. Hecht was several yards behind her when someone approached him from behind; he felt a pressure in the right side of his back and a hand in his left hip pocket. The robber then moved by him toward Mrs. Hecht and tried to take her purse. The lights were shining directly in the robber's face for several seconds. When Mrs. Hecht attempted to hit the robber

with the purse, he struck her in the head and she fell. Mr. Hecht then put his arms around the robber from behind, got his legs in a scissor and the two fell to the ground, breaking Hecht's shoulder. Mr. Hecht started to get up but was shot twice by the robber, bullets striking him in the right side and left shoulder. The robber then aimed the gun directly at Hecht's forehead; Mrs. Hecht began screaming and the robber fled, taking Hecht's wallet and the purse. The wallet contained about $95, including four 20-dollar bills; Mrs. Hecht had about $80 in her purse, including three 20-dollar bills. When police arrived, Mrs. Hecht described the robber as a slender black man, about six feet tall, with a moustache. He was wearing a dark open-collared shirt, blue jeans and a chain around his neck and he had a bandana tied on top of his head.

At about 11 p.m. the same evening, Officer Gonzales of the Elgin Police Department was sitting in a police paddy wagon at the intersection of Highland and State Streets waiting for the light. The intersection was about a half block from the Moose Club. As the light facing the paddy wagon turned green, defendant's 1971 Buick Riviera rapidly approached and came to a quick stop just inside the intersection. There were street lights on each corner of the intersection and Gonzales recognized defendant, whom he knew, as the paddy wagon passed within 10 feet of defendant seated in his car. Several minutes later Gonzales received a radio message concerning the robbery and proceeded to the parking lot where he heard Mrs. Hecht describe the robber and reported what he had seen at the intersection just moments before to Sergeant Smith.

Later that night at the hospital Sergeant Smith showed Mrs. Hecht 12 photographs of black males. She picked up two pictures, then handed the photograph of defendant to Sergeant Smith and said, "I believe this is the man that shot my husband and robbed us." A small boy found the wallet near the river the next morning. The police conducted a further search of the area and located the gun and purse. All three items were found about a block from defendant's apartment building.

Defendant was arrested the day after the robbery; he was carrying $165, including seven 20-dollar bills. At the police station defendant was informed of his constitutional rights and questioned. He denied any involvement in the robbery and told police that at 11 he had taken Eddie Mitchell, his wife's nephew, to Elgin State Hospital where they both worked. He said he had been there until midnight. When he was informed that Officer Gonzales had seen him at Highland and State at about 11 p.m., he said he was there to buy cigarettes at the Clark station at about 11:15 p.m. after taking Mitchell to Elgin State Hospital. Later that day defendant was identified by Mrs. Hecht in a six-man lineup. Sergeant Smith testified that when he told defendant he had been identified defendant said the robber must have been the guy who "hung out" with

some people from his apartment complex who looked just like him. He did not give Smith the name of that person. On May 12, the second day after the robbery, Smith again talked to defendant who, Smith testified, informed him that he knew who had committed the robbery but wouldn't give police the name unless his lawyer was present. Smith testified he then asked defendant if he wanted to talk about what happened and defendant replied that he did and informed Smith that a man came to him about 11 p.m. the night of the robbery in front of his apartment building and asked to borrow his car "to pull a job." Smith testified defendant said he gave the man the car and when he returned 15 or 20 minutes later the man said he thought he had killed someone. Smith testified defendant said he was given $30 and the two planned to recover the purse, wallet and gun from the place the man had hidden them and get rid of them later in Chicago. Smith testified he then asked defendant if his fingerprints would be found on the gun or purse and defendant replied that it was his gun and he had gone through the purse so his fingerprints would probably be found on both items.

At trial defendant was identified by both Mr. and Mrs. Hecht as the robber. Defendant's witnesses testified he was wearing a red-flowered shirt, green pants and no bandana or jewelry on the night of the robbery. None of them could account for defendant's whereabouts between 11 and 11:30 p.m. on the night in question. Defendant testified on his own behalf he was in front of his apartment building that night when Eddie Hobson, whose father defendant believed was employed by the police department, asked to borrow his car to go to the store. Hobson returned shortly thereafter with the gun, which defendant testified was not his, the purse and the wallet and gave defendant $30. Called as a witness by the State in rebuttal, Eddie Hobson testified he did not commit the robbery, had never borrowed defendant's car and that his father worked as a chauffeur to a banker. Defendant's parole officer, Donald Buckner, testified defendant told him the gun was his but that he did not shoot it that night. Dr. Rudzitis, a criminologist for the Illinois Bureau of Identification, testified that he had performed a neutron activation test on material removed from defendant's hands shortly after his arrest and concluded from the level of barium present in the sample that defendant had recently handled and fired a gun.

Defendant's first contention is that portions of the prosecutor's cross-examination of defendant and closing argument were improper and prejudicial, denying defendant a fair trial. Defendant argues that first the prosecutor improperly and repeatedly asked defendant on cross-examination whether the prosecution witnesses who had identified him or related conversations with him were lying; secondly, that in his rebuttal argument the prosecutor interjected his personal integrity into the case by

sarcastically arguing that he had gathered all the witnesses together and plotted to frame defendant; and third, that the prosecutor commented improperly on the defendant's decision to testify in violation of defendant's constitutional rights.

■■ Defense counsel offered no objection at trial to the substance of the prosecutor's cross-examination of defendant or to any portion of the State's closing argument; therefore, the alleged errors must be deemed to have been waived. (*People v. Donald* (1963), 29 Ill. 2d 283, 194 N.E.2d 227; *People v. Douglas* (1975), 29 Ill. App. 3d 738, 331 N.E.2d 359.) Ordinarily, failure to raise even constitutional issues in the trial court results in a general waiver; however, issues not properly preserved for review which deprived a criminal defendant of a fair and impartial trial may be considered where the evidence is closely balanced (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856) or where the court recognizes plain error (Ill. Rev. Stat. 1973, ch. 110A, par. 615(a)). Here the evidence is not closely balanced. Although defendant's first trial resulted in a mistrial, there was a significant difference between the two trials; in the second trial, defendant testified on his own behalf and his testimony was severely impeached both on cross-examination and in rebuttal. Also, Eddie Hobson, the man accused by defendant of committing this crime, testified in the second trial and denied the major premise of defendant's defense.

Defendant argues that the evidence in this case was closely balanced because defendant's first trial resulted in a mistrial when the jury could not agree upon a verdict. We disagree. There are many reasons why a jury cannot agree upon a verdict, only one of which is the closely balanced nature of the evidence. We will not speculate why they did not agree, however, we do not find the evidence closely balanced.

■■ ■ Although the court finds the issue has not been properly preserved, we will briefly discuss the merits of defendant's contentions. A prosecutor's alleged misconduct during trial does not constitute reversible error unless it results in substantial prejudice to the accused. (*People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881.) A defendant who takes the stand in a criminal case to testify on his own behalf exposes himself to the legitimate cross-examination of the State. In the instant case defendant's testimony was completely at odds with the testimony of the witnesses for the prosecution and it was, therefore, not improper cross-examination to point out these inconsistencies. However, portions of the cross-examination conducted by the Assistant State's Attorney were overly aggressive and unfairly conducted. Defendant was repeatedly required to respond to questions with either yes or no answers and to agree that the prosecution witnesses were all lying instead of the defendant. This court

will not hesitate to invoke the doctrine of plain error where substantial prejudice to the defendant has occurred; however, the record herein does not justify its application. While we find the prosecutor's cross-examination to have been objectionable and improper, it was harmless error beyond a reasonable doubt in this case.

■■ ■ Defense counsel in closing argument strongly attacked the motives of the State and its witnesses by implying that their aim was to obtain a conviction and not necessarily the conviction of the guilty party. Defendant now objects to the State's reply to that line of argument. While remarks attesting to the integrity of the State's witnesses, particularly by reference to the integrity of the office of the State's Attorney, would normally be improper, an advocate is permitted considerable latitude in reply to his opponent's arguments even in responding to matters of credibility. (*People v. Carbona* (1975), 27 Ill. App. 3d 988, 1010, 327 N.E.2d 546, 566, *cert. denied*, (1976), 424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114.) Defendant, having provoked what he now characterizes as a sarcastic reply, cannot now be heard to complain. (*People v. Carbona* (1975), 27 Ill. App. 3d 988, 1010, 327 N.E.2d 546, 566; *People v. Bracy* (1973), 14 Ill. App. 3d 495, 302 N.E.2d 747; *People v. Reyes* (1970), 131 Ill. App. 2d 134, 266 N.E.2d 539.) We have examined the cases relied upon by defendant (*People v. Rothe* (1934), 358 Ill. 52, 192 N.E. 777; *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256; *People v. Fuerback* (1966), 66 Ill. App. 2d 452, 214 N.E.2d 330), but find them inapposite on their facts.

■■ As to defendant's contention that the reference by the State to his decision to testify is proscribed by *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229, we find this argument to be without merit. The defendant had rested his case when Eddie Hobson entered the courtroom. Defendant then asked to be allowed to reopen his case so that he could testify on his own behalf. On cross-examination the prosecutor asked defendant if Hobson's arrival in the courtroom influenced defendant's decision to testify. This cannot be considered a comment on a failure to testify under *Griffin*. Obviously the defendant did not fail to testify.

We, therefore, find the cross-examination of defendant and the arguments of the prosecutor were not erroneous so as to require a new trial.

Defendant's second contention is that the trial court erred in allowing into evidence admissions made by defendant during custodial interrogation which he alleges were obtained in violation of the proscriptions of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Defendant made no pretrial motion in the trial court to

suppress these statements nor did defense counsel object to their introduction during trial, but defendant urges this court to recognize the plain error of admitting these statements under Supreme Court Rule 615(a). Ill. Rev. Stat. 1973, ch. 110A, par. 615(a).

Defendant does not contend he was not informed of or did not fully understand his right to counsel during questioning or his right to remain silent, nor does he contend he was tricked by the police in some way into making these statements. What he does now contend is that after having answered some questions, he made an "unequivocal request" for an attorney and that, therefore, all questioning should have ceased at that time and the statements made by him thereafter should not have been admitted at trial.

The United States Supreme Court has held that if the defendant

"* * * indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion * * *." *Miranda v. Arizona* (1966), 384 U.S. 436, 473-74, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1627.

■■ ■ The test to determine whether a defendant has waived his constitutional rights is that there must be some showing of a knowing intent to speak without the presence of counsel. If a defendant chooses to speak and does not request a lawyer after being informed of and understanding those rights the court may properly find that he understood his rights and chose not to exercise them. (*People v. Riley* (1977), 49 Ill. App. 3d 304, 309, 364 N.E.2d 306, 309.) For example, where a defendant answers some questions, asserts an alibi and denies knowledge of a crime, his decision to "stand mute" when asked some questions but not others has been found not to have been a sufficient indication that he wished to invoke his right to remain silent. *People v. Taylor* (1974), 58 Ill. 2d 69, 317 N.E.2d 97.

Defendant relies upon three cases (*People v. Parnell* (1975), 31 Ill. App. 3d 627, 334 N.E.2d 403; *People v. Pendleton* (1974), 24 Ill. App. 3d 385, 321 N.E.2d 433; and *People v. Dennison* (1973), 13 Ill. App. 3d 423, 300 N.E.2d 300) which we distinguish from the case at bar. In each of these cases the defendant first made either an unequivocal statement that he did not wish to talk or ·a clear request for an attorney before making a statement. In the instant case defendant made neither request. He answered many questions without invoking his constitutional rights in any manner. He told officers several versions of his activities on the evening in question. Finally, he said he would give them the name of the perpetrator

of the robbery but only when his attorney was present.[1] The police complied with defendant's request and did not further question him regarding the name of the person he accused but asked whether he wished to talk about what had happened. This cannot be construed as an invocation of the right to remain silent or a request for the presence of an attorney before further questioning on any other matter could take place. The knowing intent of the defendant to speak voluntarily is demonstrated by the language he employed and the circumstances surrounding the interrogation. Defendant would have us disregard his words and conclude he meant something other than what he said. We cannot find that he invoked his right to remain silent.

Defendant's third contention is that the trial court erred in instructing the jury on a theory of accountability. In his brief defendant asserts this theory could only have been based on the police officers' testimony that defendant had admitted loaning his car and gun for the purpose of committing a robbery. Because we have found this evidence to have been properly admitted, we also find there was sufficient competent evidence upon which to base instructions on accountability.

The judgment of the circuit court of Kane County is affirmed.

RECHENMACHER, P. J., and SEIDENFELD, J., concur.

---

[1] The State argues defendant feared reprisals because he believed Hobson's father to be a police department employee.