THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LESTER SPATES, Defendant-Appellant.

Second District   No. 77-286

Opinion filed August 8, 1978.

Allen L. Wiederer, Mary Robinson, and Daniel Cummings, all of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Following a jury trial, defendant, Lester Spates, was found guilty of the armed robbery of Floyd Ross and was sentenced to five to 12 years imprisonment. Defendant appeals raising the following issues:

Whether he was proved guilty beyond a reasonable doubt;

Whether he was denied a fair trial when the trial court permitted improper cross-examination of defendant; and

Whether he was denied a fair trial when the trial court denied his motion in limine to prevent the State from using a prior misdemeanor theft conviction to impeach defendant's credibility.

Floyd Ross testified that on February 6, 1976, as he was exiting the Grant Park Tavern he was struck on the head with a beer bottle, struck with a fist, and his wallet was taken from him by two men. One of the offenders, standing six feet away from him, he recognized as the defendant, having seen him in the tavern earlier that evening when he challenged John Kellems to a game of pool. According to Ross, he had had five beers at the tavern. While his glasses were knocked off when he was struck, he could see without them, and the lighting conditions in the parking lot were good. Ross identified defendant at a lineup on February 27, 1976, and at trial.

John Kellems testified that he was at the Grant Park Tavern on February 6, 1976. While he was talking with Floyd Ross and another friend, a black man came up to him and challenged him to a game of pool. After playing two games Kellems went home. Later, the police came to his home; after the police left, the same black man entered his home. The man asked him what the police wanted and repeatedly told him, "I didn't do it." On February 23, 1976, Kellems viewed a lineup in which he identified defendant as the man he had shot pool with and who had come to his home that same evening. He also identified defendant at trial.

Rockford police officer John Casky testified that in the course of his investigation of the incident he recovered part of a beer bottle that had been broken, at the scene of the attack. Casky also recovered two copies of a traffic ticket issued to defendant approximately 15 feet north of the scene of the incident. The tickets were dry and were lying on top of the snow. On the night of the attack on Ross, Casky also took photographs, including the defendant's, to the Grant Park Tavern and showed them to the bartender and several of the witnesses, including Kellems, but none of the photographs were identified.

Defendant testified that he had pleaded guilty to the offense of petty theft on October 31, 1974, and pleaded guilty to grand theft on November 15, 1968. He testified that he played pool with John Kellems at the Grant Park Tavern; that he left the tavern through the back door and went to a pharmacy. He returned to the tavern to see if a friend of his had shown up. When he didn't see his friend he left walking south. He had received a traffic citation but had lost it, though he did not know when.

During cross-examination, Assistant State's Attorney McWilliams asked the defendant the following questions:

"Q. You heard him testify that he [John Kellems] was home that February 6th in the evening and that you came into his house without knocking.

A. That's not true.

Q. And you asked him what the police wanted.

A. No.

Q. He was lying?

A. Evidently.

Q. You didn't tell Mr. Kellems that Johnny, I didn't do it?

A. No.

Q. Do you have any—do you know of any reason why Mr. Kellems would lie about this?

MR. PETERSON [defense counsel]: I will object. I think that's argumentative.

THE COURT: Overruled.  * * *

MR. McWILLIAMS: I will withdraw the question.

THE COURT: All right."

Further on during cross-examination, Assistant State's Attorney McWilliams asked defendant the following questions:

"Q. Now you have seen Floyd Ross here in the courtroom?

A. Yeah.

Q. Had you ever seen him before?

A. Not before the court appearance.

Q. I mean you didn't know him?

A. Not at all.

Q. Never saw him? You had no contact with him, is that correct?

A. That's right.

Q. Do you know why he wants to—any reason, any particular motive that you can think of, for Floyd Ross to—

MR. PETERSON: I would object. I think this is argumentative again.

THE COURT: Overruled. He may answer."

It is well-settled that the testimony of a single positive and credible

witness who had an ample opportunity to observe the accused is sufficient identification to support the conviction, even though such testimony is contradicted by the accused. (*People v. Smith* (1977), 52 Ill. App. 3d 583, 367 N.E.2d 756.) Here, Floyd Ross positively identified the defendant as one of the two perpetrators of the armed robbery and his testimony was corroborated by that of John Kellems.

■■■ Defendant argues that the identification testimony was inherently incredible and unworthy of belief. However, the fact that Ross had consumed five beers and had his glasses knocked off, at best are factors that merely go to the weight to be given his testimony. The credibility of the witnesses and the weight to be given their testimony are matters for the jury to determine. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) Given Ross' testimony that he could see without his glasses and that there was no evidence that the five beers he consumed affected his perception of the event, the jury had sufficient basis to find Ross a credible witness. Nor does Ross' failure to give police a specific description of the armed robber create a reasonable doubt. An identification is not usually made by distinguishing special features but by the total impression made upon the witness. (*People v. Smith.*) Ross' inability to describe the clothing worn by the armed robber goes to his credibility and again is for the trier of fact to determine. See *People v. Robinson* (1964), 30 Ill. 2d 437, 197 N.E.2d 45.

■■■ Finally, the fact that neither John Kellems nor the bartender and the other witnesses at the tavern could identify the defendant's photograph was merely a factor to be considered by the jury in weighing the identification testimony. (See *People v. Bounds* (1976), 36 Ill. App. 3d 330, 343 N.E.2d 622.) Neither the bartender nor the other patrons of the tavern had a reason to pay any particular attention to the defendant. Moreover, in spite of John Kellems' failure to identify the defendant's photograph, this does not make any less certain the positive identification of the defendant as the armed robber by Floyd Ross, the robbery victim. It is clear that there was sufficient evidence upon which the jury could find the defendant guilty beyond a reasonable doubt.

With regard to defendant's second issue on appeal, the portions of the cross-examination objected to have been set out above. Defendant relies upon *People v. Hicks* (1971), 133 Ill. App. 2d 424, 273 N.E.2d 450. In *Hicks,* the defendant, on cross-examination, was asked by the prosecution whether he had ever been drunk; whether he was a generous man; whether he ever used one of his weapons to threaten anyone or protect himself. The court sustained objections to the questions. During further cross-examination of defendant, defendant was asked whether the police officers and other witness had lied in their testimony. Again defense objections to the questions were sustained. In reversing the defendant's

murder conviction and granting him a new trial, the court stated that as to the first set of questions, the line of inquiry was not relevant to the sole issue to be decided by the jury; namely, whether Hick's use of deadly force against the deceased was justified. The effect of the cross-examination was to convict defendant because he was shown to be a bad man or had committed other crimes for which he had not been punished; the sustaining of the objections to the questions by the trial court did not cure the prejudicial error. In considering the second set of questions, the court stated:

> "Defendant's opinion as to the veracity of the witnesses neither proved nor tended to prove his guilt or innocence. Further, it is within the province of the jury to determine which witnesses, whose testimony conflicts, are telling the truth. [Citation.] This cross-examination, *when considered together with the prior cross-examination of defendant,* was prejudicial to defendant." (Emphasis added.) 133 Ill. App. 2d 424, 434, 273 N.E.2d 450, 458.

In *People v. White* (1977), 52 Ill. App. 3d 517, 367 N.E.2d 727, defendant there contended that he was denied a fair trial when the prosecutor improperly and repeatedly asked defendant on cross-examination whether the prosecution witnesses who had identified him were lying. While finding that the issue was not properly preserved for review, this court discussed the merits of the defendant's contention. While the prosecutor's cross-examination was objectionable and improper, this court observed that the evidence against defendant was not closely balanced, and determined that it was harmless error beyond a reasonable doubt.

■■ Likewise, given the evidence against the defendant in the case at bar, the error in the cross-examination of defendant is harmless and therefore not reversible error. By this ruling we do not approve this line of cross-examination and hereby disapprove of same.

Turning to defendant's final contention, defendant argues that only a crime which bears a sentence of over one year or is a crime of dishonesty is admissible to impeach the credibility of a witness. (*Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 363 N.E.2d 805.) Defendant acknowledges that in *People v. Clay* (1977), 45 Ill. App. 3d 145, 359 N.E.2d 482, this court determined that theft is an offense involving dishonesty, and held that the introduction of a prior misdemeanor conviction for shoplifting for purposes of impeaching a defendant was not error. Nevertheless, defendant urges this court to reexamine *Clay* in light of *Knowles v. Panopoulos*.

■■ We find nothing in our opinion in *Clay* to be in conflict with the opinion of our supreme court in *Knowles v. Panopoulos*. Nor does the fact that misdemeanor theft is not specifically mentioned in the definition of

*crimen falsi* given in *Matzenbaugh v. People ex rel. Galloway* (1901), 194 Ill. 108, 62 N.E. 546, prevent this court from concluding that theft involves dishonesty. We note that in *People v. Vaughn* (1978), 56 Ill. App. 3d 700, 371 N.E.2d 1248, the appellate court, Fifth District, concluded that a petty larceny conviction does not involve testimonial dishonesty and should not be used for impeachment; however, we find the reasoning in *Clay* to be more persuasive and do not choose to follow *People v. Vaughn*. Therefore we find defendant was not denied a fair trial by the introduction of his misdemeanor theft conviction.

On the basis of the above, judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

NASH and RECHENMACHER, JJ., concur.