THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLYDE TRIBETT, Defendant-Appellant.

First District (5th Division)    No. 80-752

Opinion filed July 17, 1981.—Rehearing denied August 14, 1981.

James J. Doherty, Public Defender, of Chicago (Jeffrey R. Martin and Aaron Meyers, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Noble Nacev, and Ann Benedek, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant was indicted for the possession of a controlled substance. (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(a).) Following a bench trial, he was found guilty and sentenced to a term of 6 years.

On appeal, he contends that: (1) the State failed to establish probable cause for his arrest; (2) the State failed to prove a continuous chain of possession of the controlled substance; (3) the court erroneously admitted evidence of a prior conviction; (4) he was improperly questioned concerning the veracity of another witness; (5) the court erred in failing to excuse, *sua sponte*, a prospective juror who expected defendant to prove himself innocent; (6) he was denied a fair trial as a result of the cumulative effect of trial errors; and (7) he was not proved guilty beyond a reasonable doubt. We affirm.

Prior to trial defendant filed a motion to quash arrest and suppress evidence. At the hearing on the motion, defendant testified that on June 21, 1977, he was employed by a television service in Chicago. At 9:45 p.m., he left work and proceeded to his girlfriend's apartment located at 3620 North Pine Grove. On his way he stopped at the Jewel supermarket where he purchased four TV dinners. He then parked his car in the 3600 block of Broadway and walked down Patterson Street and then over to Pine Grove. As he was walking east on Pine Grove, defendant felt a need to urinate, so he went to the parking lot behind the building at 3620 North Pine Grove. While he was urinating, a squad car pulled into the parking lot, two officers jumped out with their guns drawn and instructed defendant to put his hands over his head. When told to do this, defendant was still urinating. After being told a second time, he set the TV dinners on the car next to him and raised his hand.

Defendant further testified that he was then searched by one of the officers. Not finding anything, the officer took his flashlight and looked under the car next to defendant. The officer recovered a package approximately 15 feet from where defendant was standing. After inform-

ing the officer that the package did not belong to him, he was placed under arrest.

Officer Fraser testified that on June 21, 1977, he and his partner were on patrol in a marked squad car and in uniform. As he was driving on Patterson near Pine Grove, he saw defendant walking on Patterson and then run into an alley leading to the parking lot at 3658 North Pine Grove. The officers in their squad car followed defendant into the alley and observed defendant standing between a parked car and a wall. The officers, with their guns drawn, identified themselves and ordered defendant to turn around. After the second order, defendant, while urinating, turned around. Defendant raised his right hand into the air but kept his left hand near the waistband area of his pants. Fraser then observed defendant drop a packet to the ground and attempt to kick it with his foot. After retrieving the packet which contained a crushed brown powder, Fraser placed defendant under arrest. Thereafter, the court denied defendant's motion to quash arrest and suppress evidence.

The following pertinent evidence was adduced at trial.

Officer Fraser testified that on June 21, 1977, he was on patrol with his partner, Officer O'Grady. As they were proceeding westbound on Patterson, they observed defendant walking toward them. Fraser continued to drive westbound when he saw defendant run into an alley. The officers followed defendant and momentarily lost sight of him, after which Fraser saw defendant facing a cement wall between two parked cars in the parking lot. The officers got out of their squad car and ordered defendant to turn around. Defendant was urinating and when told to turn around a second time, he complied. Defendant put his right hand in the air and kept his left hand around his waistband. Defendant threw a packet to the ground and attempted to kick it under a car. Fraser picked it up, saw it contained a crushed brown powder, and placed it in his pocket. Defendant was then arrested and taken to the police station.

Fraser further testified that at the station he handed the packet to O'Grady who placed it in a department evidence envelope. O'Grady put his signature on the back of the envelope and then placed tape over the signature to insure that they would be able to detect whether anyone tampered with the envelope. An evidentiary number and a record's division number were also placed on the envelope. O'Grady then left the room with the envelope and went downstairs. Fraser did not go with him. At trial O'Grady was unable to testify because he had been killed in a car accident several months earlier.

After testifying, over objection, as to the general procedure for transporting evidence to the police laboratory, Fraser identified the envelope and the brown substance contained therein, marked for identi-

fication purposes, as the articles obtained on the night of June 21, 1977. Fraser also identified Officer O'Grady's signature. Although O'Grady's signature and the tape were intact, the envelope was not in the same condition as when he had last seen it. The envelope now had staple markings, tape and initials as well as a slit along one side. After the arrest, the next time Fraser saw the envelope containing the controlled substance was the morning of trial.

Elizabeth Olsen-Koza, a chemist for the Chicago Police Department, testified that on June 29, 1977, she received a sealed envelope. She did not know when the envelope was received by the police laboratory; however, when shown a receipt, she testified that it arrived June 22, 1977. After performing a series of tests, Ms. Olsen-Koza was able to determine that the substance was diacetyl morphine, the chemical name for heroin, and that it had a total weight of 38.45 grams.

At this point defendant's objection to the admission of the brown substance into evidence on the ground that the State had failed to prove a continuous chain of possession was overruled.

Defendant's testimony at trial mirrored the testimony he gave at the hearing on his motion to quash arrest and suppress evidence, except that at trial, he also testified that while standing in the parking lot, he saw the door to the building close as if someone had just walked in.

In rebuttal, the State, over objection, introduced a certified copy of defendant's prior conviction. In 1975, defendant had pleaded guilty to possession of a controlled substance for which he received 5 years' probation.

Thereafter, the jury found defendant guilty of possession of a controlled substance. Following a hearing in aggravation and mitigation, he was sentenced to a term of 6 years. Defendant appeals.

OPINION

I

Defendant first contends that the controlled substance seized at the time of his arrest should have been suppressed because the State failed to establish probable cause for his arrest. He argues that his arrest occurred at the point Officer Fraser and his partner jumped out of the car with their guns drawn. The State maintains that defendant was not arrested until after he voluntarily dropped the packet to the ground.

■■ As a general rule, it is permissible for a police officer to make a warrantless arrest if he has probable cause to believe that the person arrested is committing or has committed a criminal offense. (*People v. Brown* (1980), 88 Ill. App. 3d 514, 410 N.E.2d 505; *People v. Philson* (1979), 71 Ill. App. 3d 513, 389 N.E.2d 1223; Ill. Rev. Stat. 1977, ch. 38, par. 107—2(c).) Whether probable cause exists in a particular case

depends on whether the totality of facts and circumstances known to the officers when the arrest is made are sufficient to warrant a man of reasonable caution to believe that the arrested person has committed a crime. *People v. Philson; People v. Green* (1980), 88 Ill. App. 3d 929, 410 N.E.2d 1003; see also *People v. Higgins* (1972), 50 Ill. 2d 221, 278 N.E.2d 68, *cert. denied* (1972), 409 U.S. 855, 34 L. Ed. 2d 100, 93 S. Ct. 195.

■■ ■ An arrest is made by an actual restraint of the person or by his submission to custody. (*People v. Fulton* (1979), 68 Ill. App. 3d 915, 386 N.E.2d 605; Ill. Rev. Stat. 1977, ch. 38, par. 107—5(a).) The elements necessary to constitute an arrest are: (1) the authority to arrest; (2) assertion of that authority with the intent to effect an arrest; (3) the understanding of the arrestee; and (4) restraint of the person to be arrested. (*People v. Fulton; People v. Bridges* (1970), 123 Ill. App. 2d 58, 259 N.E.2d 626; see also *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870.) There is, however, a difference between an arrest and the stopping of an individual for questioning as part of an investigation. *People v. Fulton.*

■■ Notwithstanding the lack of probable cause to arrest, a police officer, in appropriate circumstances and in an appropriate manner, may approach and stop an individual for a reasonable period of time in order to investigate possible criminal behavior, provided that the officer's decision to stop is based on specific and articulable facts which, when combined with rational inferences from those facts, reasonably warrant an investigative intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 20-21, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879; *People v. Grice* (1980), 87 Ill. App. 3d 718, 410 N.E.2d 209; Ill. Rev. Stat. 1977, ch. 38, par. 107—14.) In determining whether a stop is reasonable, an objective standard is used, namely whether the facts available to the police officers warrant a man of reasonable caution to believe that the action taken was appropriate. (*Terry v. Ohio; People v. Grice.*) However, a mere suspicion or hunch is not sufficient. (*People v. Jackson* (1979), 77 Ill. App. 3d 117, 395 N.E.2d 976.) Finally, the standard for appellate review of a motion to suppress is whether the trial court's ruling was manifestly erroneous. *People v. Brown* (1980), 88 Ill. App. 3d 514, 410 N.E.2d 505; *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506.

While defendant correctly asserts that the mere observation of a man running into a parking lot, absent other articulate reasons for suspicion, does not yield probable cause for an arrest, there is no indication in the record that the police intended to arrest defendant at the point they exited their squad car, notwithstanding that their guns were drawn. At approximately 10:30 p.m. on the evening of June 21, 1977, Officer Fraser and his partner were on patrol in a marked police car. As they were proceeding

westbound on Patterson Avenue, they saw defendant six or seven houses away walking eastbound and carrying a brown paper bag. When the squad came within 10 or 20 feet of defendant, he suddenly darted through an alley into the parking lot of the building at 3658 North Pine Grove. The officers immediately followed, whereupon they observed defendant standing between a parked car and a wall. The officers exited their car with their guns drawn, announced their station and ordered defendant to turn around. After the second order, defendant, while urinating, turned around. Defendant raised his right hand but kept his left hand near the waistband area of his pants. Defendant was instructed to remove his left hand from his waistband area and put it where it could be seen. Fraser then observed defendant drop a packet to the ground and attempt to kick it with his foot. After retrieving the packet which contained a crushed brown powder, defendant was arrested.

■■ While there is no question that defendant's sudden running into the alley was not a crime, it certainly was unusual. From the officer's viewpoint defendant's conduct at 10:30 p.m. was at least reasonably suspicious to justify an inquiry into his sudden flight. (Compare *People v. Clay* (1971), 133 Ill. App. 2d 344, 273 N.E.2d 254.) Upon entering the alley, the officers saw defendant facing the wall and standing between the wall and a parked car. From this position it would be difficult, prior to exiting their car, for the officers to determine defendant's activities. The officers' conduct in exiting their car and ordering defendant to turn around was necessary in order to ascertain his identity. While it is recognized that no formal declaration of arrest is necessary for an arrest to occur (*People v. Brown* (1980), 81 Ill. App. 3d 271, 401 N.E.2d 310; *People v. Zach* (1979), 77 Ill. App. 3d 17, 395 N.E.2d 758), the fact that the officers had their guns drawn does not necessarily indicate an arrest. (*People v. Basiak* (1977), 50 Ill. App. 3d 155, 365 N.E.2d 570.) Considering that defendant had his back to the officers so that the officers could not determine the location of his hands or whether he possessed any weapons, they were justified in drawing their guns in order to insure their own personal safety. Furthermore, there is nothing to suggest that the officers were pointing their guns at defendant. Under the circumstances, we conclude that it was not unreasonable for the police officers to routinely draw their weapons as a precautionary measure to guard against unexpected developments in the course of their investigation. Additionally, defendant himself testified that he was facing the wall as the officers approached and from this position he could not have seen that their guns were drawn until after he turned around. As such, the drawing of guns was of little consequence to defendant's decision to turn around in compliance with the officers' request.

■■ It has been repeatedly held that the two essential elements of an arrest

are the intent of the officer and the understanding of the arrestee. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870; *People v. Zach* (1979), 77 Ill. App. 3d 17, 395 N.E.2d 758.) A review of the evidence adduced at the hearing on the motion to suppress indicates that these two elements were not present. Until that point in time when defendant discarded the packet, the police officers were merely investigating his suspicious behavior. It is especially important to note that upon exiting their car, the officers did not inform defendant that he was under arrest or that he had committed any violation. It is apparent from the record that the officers were not aware that any crime had been committed. In addition, defendant's own testimony indicates that he did not consider himself arrested until after the officers had picked the packet off the ground. Accordingly, we find that the facts in the instant case fail to establish or suggest an immediate intention on the part of the police officers to arrest defendant upon exiting their car.

■■ Upon being instructed to remove his left hand from the waistband area of his pants and to get it up where it could be seen, defendant dropped a packet to the ground and attempted to kick it with his foot. After Fraser retrieved the packet and determined that it contained a crushed brown powder, probable cause for defendant's arrest existed. (See *People v. Cimino* (1970), 45 Ill. 2d 556, 257 N.E.2d 97.) Consequently, we cannot say that the trial court's order denying defendant's motion to suppress was manifestly erroneous.

## II

Defendant next contends that his conviction must be reversed because the State failed to establish a continuous chain of possession between the substance seized by the arresting officers and the substance analyzed by the police department's chemist. The State maintains that a proper foundation for the introduction of heroin into evidence was properly laid through the testimony of two State's witnesses and that there is no indication that the exhibit had been tampered with in any way.

■■ Physical evidence may be admitted provided there is evidence to connect the objects found with the defendant and the crime. (*People v. Miller* (1968), 40 Ill. 2d 154, 238 N.E.2d 407.) While there must be an unbroken chain of possession between the article seized and the article analyzed (*People v. Maurice* (1964), 31 Ill. 2d 456, 202 N.E.2d 480; *People v. Liapis* (1972), 3 Ill. App. 3d 864, 279 N.E.2d 368), the foundation for the introduction of objects into evidence may be laid either through their identification by a witness or through the establishment of a chain of custody. (*People v. Greer* (1963), 28 Ill. 2d 107, 190 N.E.2d 742; *People v. LeBron* (1980), 83 Ill. App. 3d 598, 404 N.E.2d 540.) In establishing a sufficient chain of possession, the State is not required to exclude all

possibility of tampering. In the absence of any tangible suggestion of tampering, alteration, or substitution, it is sufficient to prove a reasonable probability that the article has not been changed in any important respect. *People v. Rhoades* (1979), 74 Ill. App. 3d 247, 392 N.E.2d 923.

After retrieving the packet containing the brown powder, Fraser placed the packet in his pocket. At the police station he handed the packet to O'Grady who sealed it in an evidence envelope, signed the envelope and placed tape over his signature. An inventory number and a record's division number were also placed on the envelope. O'Grady then left the room to give the evidence to the desk sergeant who, as a matter of procedure, would place the evidence into the safe until it could be transported to the crime lab. Although O'Grady was deceased at the time of trial and therefore unable to testify that he had given the evidence envelope to the desk sergeant, Fraser identified O'Grady's signature as the signature on the evidence envelope and noted that the scotch tape was still intact. Fraser also identified the brown substance which defendant dropped on the night of June 21, 1977. Additionally, the police chemist testified that she received the evidence envelope on June 29, 1977, for analysis. She also testified that she received the envelope in the same sealed condition and that the only change in the envelope since she had first seen it was that there was additional writing on the envelope and slits had been made on two sides. She testified that she made one of the slits and some of the markings. The additional marks and other slit occurred during trial for the purpose of identification.

Defendant, relying on *People v. Woessner* (1971), 132 Ill. App. 2d 58, 268 N.E.2d 508, argues that because the State failed to account for the period between the time O'Grady left Fraser's sight with the sealed envelope on June 21, 1977, and June 29, 1977, when the police department chemist testified that she first saw the envelope, that it failed to prove beyond a reasonable doubt that the substance seized was the substance analyzed by the chemist. However, *Woessner* is distinguishable. There the police testified that the contraband was kept unsealed for five days and that he did not initial, seal or secure the contraband in the vault which was available. Here, the officers placed the packet in question into an evidence bag, sealed it, signed it, and placed tape over the signature. The chemist testified that she received the evidence envelope in that same condition.

The present situation is analogous to *People v. Anthony* (1963), 28 Ill. 2d 65, 190 N.E.2d 837. There the police officer (similar to the instant case) had placed the contraband in a sealed envelope, placed his name on the back, covered the same with tape, and delivered it to the crime laboratory. The chemist who examined the narcotics found the envelope in the same sealed condition with no suggestion of tampering, alteration or

substitution. That court held that the techniques employed sufficiently established a proper foundation notwithstanding the lack of testimony from the custodian who actually received and stored the sealed envelope prior to the time it was analyzed.

■■ Since there is no suggestion that the substance recovered by Officer Fraser was altered, substituted or tampered with other than scientific testing, the State sufficiently established a proper foundation for its introduction into evidence. *People v. Pagliara* (1977), 47 Ill. App. 3d 708, 365 N.E.2d 72; *People v. Anthony*.

### III

Defendant next contends that his conviction must be reversed because he was unfairly prejudiced when the State adduced evidence of a prior guilty plea to possession of a controlled substance—heroin. He argues that the prejudice far outweighed any probative value of the prior conviction. The State maintains the evidence of defendant's prior conviction was probative and did not unfairly prejudice defendant.

■■ A defendant who testifies in his own behalf may be impeached by proof of a prior conviction, but such impeachment is limited to the introduction into evidence of the record of conviction or an authenticated copy thereof. (*People v. Flynn* (1956), 8 Ill. 2d 116, 133 N.E.2d 257; *People v. White* (1980), 84 Ill. App. 3d 1044, 406 N.E.2d 7.) However, only crimes punishable in excess of one year or involving dishonesty or false statement may be used for impeachment purposes if the trial judge determines that the probative value of the prior conviction outweighs the danger of unfair prejudice. (*People v. Smith* (1980), 88 Ill. App. 3d 897, 410 N.E.2d 973; see also *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) In determining whether the probative value of the conviction outweighs the prejudicial effect, the trial court must examine several factors: (1) the nature of the prior crime; (2) the nearness or remoteness in time of the conviction to the present time; and (3) whether the prior crime was similar to the one charged. (*People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563; *People v. Washington* (1980), 85 Ill. App. 3d 522, 407 N.E.2d 185.) However, the trial court is given wide latitude in determining whether the probative value of a prior conviction outweighs any unfair prejudice to defendant. *People v. Fleming* (1980), 91 Ill. App. 3d 99, 413 N.E.2d 1330; see also *People v. Montgomery*.

■■ Defendant argues that the value of his previous conviction was minimal except to the extent that felons, generally, are not considered as truthful as others, that the prejudice was enormous in that the conviction was for an offense identical to the offense charged. Illinois courts have consistently determined that a conviction for the unlawful possession or delivery of controlled substances would be the type of conviction which

would be probative of credibility and would afford a basis for impeaching credibility. (*People v. Washington*; *People v. Ramey* (1979), 70 Ill. App. 3d 327, 388 N.E.2d 196.) Additionally, a prior conviction which is similar to the crime presently charged does not mean it cannot be introduced. (*People v. Fleming*; *People v. Washington*; *People v. Hine* (1980), 89 Ill. App. 3d 266, 411 N.E.2d 930.) Here, defendant's prior conviction occurred in 1975 and was well within the time limitations set forth in *People v. Montgomery*. Finally, the court did give the jury a limiting instruction on the use of defendant's prior conviction.

Accordingly, we cannot say that the trial court abused its discretion in allowing defendant's prior conviction to be used for impeachment purposes.

## IV

Defendant next contends that he was improperly questioned concerning the veracity of another witness. The State maintains that the court did not abuse its discretion in permitting such questioning and, further, any error that may have occurred was harmless.

During cross-examination defendant was asked several times whether Officer Fraser was lying. The exchange complained of is as follows:

> "Q. So, the officers were lying when Officer Fraser said the headlights were facing you?
>
> A. Right.
>
> Q. He was also lying saying the spotlights were on?
>
> A. I don't know.
>
> Q. Was he also lying when he said his back was to you?
>
> A. His back to me?
>
> Q. Your back was to him?
>
> A. Never.
>
> Q. Was he lying?
>
> Mr. Tyrell: Objection.
>
> The Court: Sustained.

* * *

> Q. Officer Fraser was lying when he said he saw you throwing that, also?
>
> Mr. Tyrell: Objection.
>
> The Court: Overruled. He may answer.
>
> A. No, he didn't see me drop. I didn't drop it.
>
> Q. He was lying when he testified when he saw you, is that correct, sir?
>
> A. Yes, he was."

The credibility of witnesses and the weight to be given their

testimony are matters for the jury to determine. (See *People v. Spates* (1978), 62 Ill. App. 3d 890, 379 N.E.2d 869; *People v. Graves* (1978), 61 Ill. App. 3d 732, 378 N.E.2d 293.) Consequently, it is improper to attempt to force a defendant to judge the veracity of a witness against him. (*People v. Graves; People v. Velillari* (1980), 84 Ill. App. 3d 333, 405 N.E.2d 466.) Nevertheless, where such questioning does not substantially prejudice defendant or affect the jury's determination of guilt, it has been deemed harmless beyond a reasonable doubt. *People v. Velillari; People v. Cohen* (1980), 83 Ill. App. 3d 706, 404 N.E.2d 976; *People v. Spates; People v. White* (1977), 52 Ill. App. 3d 517, 367 N.E.2d 727; *People v. Meeks* (1973), 11 Ill. App. 3d 973, 297 N.E.2d 705.

Relying on *People v. Hicks* (1971), 133 Ill. App. 2d 424, 273 N.E.2d 450, defendant submits this line of questioning was prejudicial and that therefore his conviction must be reversed. *Hicks* is distinguishable. While a new trial was granted in *Hicks*, that case involved more than the improper questioning of defendant concerning the veracity of the State's witnesses. That case also involved improper attempts by the prosecutor during cross-examination to link defendant to previous unrelated wrong-doings. That court held that the prosecutor's questions, whether all the other witnesses were lying, "when considered together with the prior cross-examination of defendant, was prejudicial to defendant."

■■ Upon review of the entire record, we conclude that this line of questioning in the instant case would not have affected the jury's determination of guilt. Throughout the hearing on the motion to quash the arrest and the trial, Officer Fraser's testimony remained unimpeached. He testified that after requesting defendant to turn around, he saw defendant discard a packet which he retrieved and inspected. Upon discovering that the packet contained a brown substance, he arrested defendant. Defendant on the other hand denied discarding the packet and testified that the packet did not belong to him. The testimony of these individuals was in direct contradiction and necessarily raised the inference that one had to be lying. Defendant was merely stating the obvious conclusion the jury would have to reach in order to arrive at a finding of not guilty. As such, we conclude that in the context of the entire case, these questions although improper did not substantially prejudice defendant. Compare *People v. Spates* (1978), 62 Ill. App. 3d 890, 379 N.E.2d 869; *People v. White* (1977), 52 Ill. App. 3d 517, 367 N.E.2d 727.

## V

Defendant next contends that the court erred in failing to excuse, *sua sponte*, a prospective juror who expected defendant at trial to prove himself innocent.

Initially, it should be noted that during jury selection defendant found the juror he now challenges to be acceptable. The failure to challenge a juror for cause or exercise a peremptory challenge waives any objection to that juror. *People v. Ford* (1960), 19 Ill. 2d 466, 168 N.E.2d 33; *People v. Knippenberg* (1979), 70 Ill. App. 3d 496, 388 N.E.2d 806; *People v. Higgins* (1975), 27 Ill. App. 3d 266, 327 N.E.2d 135.

Nevertheless, defendant relying on *People v. Stone* (1978), 61 Ill. App. 3d 654, 378 N.E.2d 263, submits that although the court was not asked to excuse the juror, his confusion was so manifest that the duty to excuse him must be held to fall on the court. *People v. Stone* is distinguishable. There, three veniremen specifically stated that they were unable to be fair and impartial jurors. When the court refused to excuse the first two for cause, defense counsel was forced to expend two peremptory challenges. At the close of the selection process, defendant sought to challenge the third venireman but this challenge was also refused. Because defendant had exhausted all his peremptory challenges, the juror was accepted and participated in the trial. That court held that the refusal to excuse these veniremen for cause was reversible error. Unlike *Stone*, defendant here did not object to the venireman nor had he exhausted his peremptory challenges.

In addition, the party seeking to challenge a juror for cause bears the burden of demonstrating that the jury possessed a disqualifying state of mind. (*People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.) An impartial jury has been described as one made up of persons prepared to exercise their personal judgment, favoring neither prosecution nor the accused. *People v. Stone.*

The prospective juror in the present case indicated that he understood that a defendant is presumed innocent until proven guilty, that he understood that a defendant need not testify, and that this should not be held against him, and that he would follow the law. After some confusion arose concerning whether a defendant should prove himself innocent, defense counsel posed this question:

> "Q. Would you then require us knowing what the law is, the law being that we don't have to prove him innocent, would you expect us, would you hold it against us if we didn't prove him innocent?
>
> A. No. I wouldn't hold it against you."

At this point the court stated that it was sure there was just a misunderstanding and that "if there is any question, we will try and straighten it out." Defense counsel accepted the venireman without objection. There is no indication that this juror possessed a disqualifying state of mind that would require that he be excused for cause.

■■ Notwithstanding the waiver, we find this contention to be without merit.

## VI

Defendant next contends that he was denied a fair trial as a result of the cumulative effect of trial errors.

### (a)

Defendant maintains that Fraser's testimony concerning normal narcotic inventory procedures was improper because no foundation was laid as to his personal knowledge of such procedures and because it was irrelevant. The State maintains that this testimony was proper because it constituted general knowledge on Fraser's part and that it was relevant since the State had the burden of establishing a chain of possession for substances seized at the time of defendant's arrest.

Evidence offered to prove a matter in controversy or which has probative value of a contested issue is material. (*Joynt v. Barnes* (1979), 71 Ill. App. 3d 187, 388 N.E.2d 1298; *People v. Twitty* (1975), 25 Ill. App. 3d 1065, 324 N.E.2d 222.) Relevancy is established where the fact offered tends to prove a disputed fact or render the matter in issue more or less probable in light of logic experience and accepted assumptions of human behavior. (*People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295; *People v. Quinlan* (1980), 85 Ill. App. 3d 1079, 407 N.E.2d 935.) The trial court is given a wide scope of discretion in ruling on issues of materiality. *People v. Quinlan; People v. King* (1978), 61 Ill. App. 3d 49, 377 N.E.2d 856.

In the instant case a proper foundation was laid for the introduction of this testimony. Before physical evidence may be admitted, there must be evidence to connect the objects found with the defendant and the crime. (*People v. Miller* (1968), 40 Ill. 2d 154, 238 N.E.2d 407.) It is also necessary for the State to establish an unbroken chain of possession between the article seized and the article analyzed. (*People v. Maurice* (1964), 31 Ill. 2d 456, 202 N.E.2d 480.) However, the foundation for the introduction of objects into evidence may be laid either through their identification by a witness or through the establishment of a chain of custody. *People v. Greer* (1963), 28 Ill. 2d 107, 190 N.E.2d 742.

■■ ■ In establishing the chain of custody for the seized substance, Officer Fraser testified that at the police station he handed the packet to O'Grady, who sealed it in an evidence envelope, signed the envelope and placed tape over his signature. O'Grady then left the room to give the evidence to the desk sergeant. Both Fraser and the police department chemist identified the packet and the substance contained therein at trial. This testimony was sufficient to establish a proper foundation for the packet's introduction into evidence. (*People v. Anthony* (1963), 28 Ill. 2d 65, 190 N.E.2d 837.) Unlike defendant suggests, Fraser, an eight-year veteran, would be qualified to testify as to normal police procedures. This testimony, while not necessary to establish a foundation for the introduc-

tion of the packet into evidence, was relevant as explanatory material rather than substance evidence. It was material because it was probative to the issue of a proper chain of custody since strict procedures would render less likely that the substance recovered had been altered, substituted or tampered with.

■■ But even if we were to conclude that this testimony was improperly admitted, it would be harmless error. As we have previously noted, the identification of the packet and substance contained therein by both Fraser and the police department chemist would be a sufficient foundation for its introduction into evidence. As such, the testimony regarding normal police procedures for the inventorying of evidence was merely cumulative. Where the facts involved are established by other competent evidence, errors in the admission of cumulative evidence are harmless. *People v. Daliege* (1976), 40 Ill. App. 3d 706, 352 N.E.2d 247; *People v. Williamson* (1976), 44 Ill. App. 3d 208, 357 N.E.2d 1283; *People v. Williams* (1976), 36 Ill. App. 3d 680, 344 N.E.2d 648.

(b)

Defendant also maintains that the trial court's limitation of defense counsel's cross-examination of Fraser denied him a fair trial.

After establishing that Fraser had been assigned to a "special operations group," defense counsel asked the following questions:

(1) "Isn't it a fact, the way you stayed on the task force is by making big felony arrests?"

(2) "Officer Fraser, were you not required to make a certain number of arrests for a police period?"

Defendant argues that these questions were proper because they sought to establish Fraser's bias and motivation in the present case. The State maintains that the questions were properly stricken because they were irrelevant to the issues in the present case.

■■ Although a defendant should have the widest latitude in cross-examining a witness for bias, the scope of cross-examination rests within the court's discretion. (*People v. Menendez* (1980), 84 Ill. App. 3d 1140, 406 N.E.2d 127; *People v. Siler* (1980), 85 Ill. App. 3d 304, 406 N.E.2d 891.) Absent a clear abuse of that discretion, it will not be disturbed on review. *People v. Agee* (1980), 85 Ill. App. 3d 74, 405 N.E.2d 1245.

■■ Defendant's inquiry concerning the number of felony arrests Fraser was compelled to make was, at best, remotely relevant to the issue of defendant's guilt. In addition, defendant does not contend nor does an examination of the record reveal that the court's restriction of this line of inquiry manifestly prejudiced defendant. Accordingly, we find the restriction to be properly within the court's discretion. *People v. Nugara* (1968), 39 Ill. 2d 482, 236 N.E.2d 693.

## VII

Finally, defendant contends he was not proved guilty beyond a reasonable doubt to be in possession of a controlled substance.

██ It is for the trier of fact to determine the credibility of witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Harris* (1972), 53 Ill. 2d 83, 288 N.E.2d 873.) Discrepancies or conflicts in the testimony generally affect only the weight to be given the testimony and the trier of fact is free to accept or reject a witness' testimony. (*People v. Beasley* (1977), 54 Ill. App. 3d 109, 369 N.E.2d 260.) It is well settled that the testimony of one credible witness, if positive, is sufficient to convict even where the testimony is contradicted by the accused. *People v. Bradley* (1971), 3 Ill. App. 3d 101, 278 N.E.2d 243.

At trial, Officer Fraser testified that he saw defendant drop a packet to the ground and attempt to kick it with his foot. After retrieving the packet and determining that it contained a crushed brown powder, Fraser placed defendant under arrest. Defendant took the stand and denied discarding the packet. The triers of fact, as they were entitled to do, determined that the testimony of the police officer was credible and rejected that of defendant. (Compare *People v. Bradley*.) We have carefully reviewed the record and find the evidence sufficient to sustain the verdict of the jury beyond a reasonable doubt.

## VIII

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.