# Illinois Official Reports

## Appellate Court

***People v. Garner*, 2017 IL App (2d) 150045**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEROME GARNER, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-15-0045 |
| Filed | March 24, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Stephenson County, No. 14-CF-216; the Hon. Michael P. Bald, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas A. Lilien, Patricia Mysza, and Robert N. Markfield, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Carl H. Larson, State's Attorney, of Freeport (Lawrence M. Bauer and Ivan O. Taylor, Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Justices Burke and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1 After a jury trial, defendant, Jerome Garner, was convicted of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2014)). He was acquitted of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2014)) and unlawfully interfering with the reporting of domestic violence (720 ILCS 5/12-3.5(a) (West 2014)). The trial court denied defendant's posttrial motion and sentenced him to 30 months' imprisonment. On appeal, he contends that the court erred in allowing the State to impeach him with his conviction of a felony cannabis offense. We affirm.

¶ 2 The State alleged that defendant committed (1) domestic battery in that, on or about August 3, 2014, he knowingly caused harm to Katie K. by choking her with his hands, and he had previously been convicted of domestic battery; (2) aggravated domestic battery in that, in addition to the foregoing, he applied pressure to Katie's throat and neck area, impeding her normal blood circulation or breathing; and (3) interference with the reporting of domestic violence in that he knowingly prevented Katie from calling the police by taking away her cell phone.

¶ 3 Before trial, defendant moved to bar the State from impeaching him with evidence of his prior convictions of (1) domestic battery and (2) a felony involving cannabis.[1] At a hearing on the motion, the State argued in part that the cannabis conviction should be admitted because the charge was dissimilar to the ones on which defendant was now being tried and it had impeachment value as "a crime against society." The judge barred the domestic battery conviction but allowed the cannabis conviction. He stated that, under the balancing test of *People v. Montgomery*, 47 Ill. 2d 510 (1971), and *People v. Williams*, 161 Ill. 2d 1 (1994), the cannabis conviction's probative value as impeachment outweighed its potential for undue prejudice but the domestic battery conviction was too prejudicial. He did not elaborate or cite any case authority other than the general reference to *Montgomery* and *Williams*.[2]

¶ 4 At trial, the State's first witness was Nichole Mashaw. On direct examination, she testified as follows. At about 2:30 a.m. on August 3, 2014, she was standing in front of her house at 601 North Brewster in Freeport. A car pulled up down the street. An African-American man approached the car and went around to the driver's side. A white woman got out of the car. The man "proceeded to take her by the throat, or whatever, and drag her to like the house, or whatever, and she was screaming." Mashaw entered her house to call the police.

¶ 5 Mashaw testified on cross-examination as follows. The woman was the only person inside the car, as far as Mashaw could see. The encounter took place about 30 to 40 yards away on the same side of the street. Mashaw testified inconsistently as to which side of the car the woman exited from and on which side the man approached her. On redirect examination, Mashaw testified that the woman exited the vehicle by herself and was then dragged toward the house.

---

[1]The exact charge of which defendant was convicted is not apparent from the record, but the parties agree that it was a felony involving cannabis.

[2]We note that the *Montgomery* test for allowing impeachment by evidence of conviction of a crime has been codified. Ill. R. Evid. 609 (eff. Jan. 1, 2011). Although Rule 609 had been in effect for several years when defendant was tried, neither the parties nor the trial court made any reference to it. The omission is of no consequence here, however, as the rule simply tracks the holding of *Montgomery*, without any change that is pertinent here.

¶ 6 Katie testified on direct examination as follows. On August 3, 2014, she had been dating defendant for almost a year. She lived at Yellow Creek Court; he lived on Brewster. On August 3, 2014, she dropped him off on Brewster and went to a convenience store. She saw defendant's cousin Ontario McClain and McClain's friend. McClain asked her for a ride home, so Katie let him and his friend into the car. Defendant then called and told Katie that he had her license. She told him that she would be back to get it, and she added that she had McClain in the car. Defendant told her that she "better not have nobody in [her] f'ing car." She responded that McClain was defendant's cousin and needed a ride home. She drove back to Brewster.

¶ 7 Katie testified that, when she pulled up, defendant got upset again and told her that she "shouldn't have had nobody fucking [*sic*] in that car." Defendant then pulled open the driver's door and saw that Katie was holding her cell phone and "already had the cops [*sic*] number because [she] was ready to call them." Defendant took the phone and removed the keys from the ignition. By then, Katie had exited the car and was asking defendant to return the phone and the keys so that she could go. Defendant was angry. Katie started to walk backward toward a house, where she could see that defendant's cousin Tremana Davis had turned on the lights. (Defendant resided next door.) As Katie tried to get to the house, defendant reached out and placed his hands completely around her neck. She tried to pull them away but could not. She briefly had trouble breathing but did not gasp for air. She was screaming, and the choking caused her pain. They ended up inside the house.

¶ 8 Katie testified that Davis told defendant to let Katie go. Defendant finally did, and Davis kept her and defendant separated. Katie pleaded with defendant to give her the keys and the phone. He made her promise not to call the police and then gave her the keys and the phone. Katie drove away, dropped off McClain, and called the police. Later that day, officers came to her apartment and photographed her injuries. Katie identified five photographs, which were published to the jury. Katie testified that her neck was "completely red" from the left side around the front to the right side and that she had some marks on the right side that "almost looked like scratches." She did not go to the hospital.

¶ 9 Katie testified on cross-examination as follows. As she pulled up, defendant came to the driver's side, opened the door, shut the car off, and took the keys. McClain jumped out of the car when he saw defendant come after Katie. Katie was holding her phone; defendant took it. Katie exited the car and asked him to return the phone and the keys so that she could leave. Defendant had the phone and the keys in his hand the whole time. There were no steps up to the front door of the house. When Davis opened the door, defendant was still choking her.

¶ 10 Katie testified that defendant did not drag her toward the house; she backpedaled toward it. Earlier that evening, she had had "a couple drinks," but they had not affected her memory. On redirect, Katie testified that she did not know what had been "going on with the phone and the keys" (her attorney's phraseology) while defendant had been choking her.

¶ 11 Curt Coplien, a Freeport police officer, testified that, at around 2:30 a.m. on August 3, 2014, he spoke to Katie at her apartment. She had red discolorations around the front and sides of her neck near the base and some scratches on the left side that were starting to welt over. Coplien photographed the injuries. In the photographs, the redness appeared lighter than it had in person. When he spoke to Katie, she did not appear to be under the influence of anything.

¶ 12 The State rested. Defendant testified on direct examination as follows. On August 3, 2014, he resided next door to Davis. Early that morning, Katie dropped defendant off. He went to Davis's residence. Katie returned; McClain and his friend were with her. Defendant went

outside, opened the driver's door, and told Katie that she should not be driving, because she was drunk. He suggested that they go inside and discuss the problem. Katie became angry and started calling him "fuckhead" and other names. She exited the car. Defendant took her phone off the console, grabbed her purse, and removed the car keys. He took the phone and the purse because he did not want McClain's friend near them. He took the keys because Katie was drunk. The two men got out of the car.

¶ 13    Defendant testified that next he closed the car door and told everyone to go inside "to solve this mess." Katie started to fall, so defendant grabbed her around the waist with his left hand and said "come on, baby, you know, you [*sic*] drunk." She started yelling and cursing. Defendant told her to quiet down. They went to Davis's house. Defendant knocked and asked Davis to open the door. Davis did so, and Katie fell down at the base of the steps leading to the second floor. Defendant grabbed her and got her up, and they entered the house. Defendant did not drag Katie into the house or put his hands around her neck. Inside, he put the phone, keys, and purse onto a table. Katie kept cursing and said that she just wanted to go. Defendant told her that she did not need to go right yet. She responded, "Give me my shit, I want to go." Davis told defendant to let Katie go. Defendant told Katie to leave.

¶ 14    Defendant testified that, when Katie first pulled up, he did not put his hands around her neck. Instead, he grabbed her around the waist with his left hand while he held the phone and the purse in his right hand and the keys in his left hand, with the key ring around his finger. When defendant picked up Katie's phone, the screen was blank.

¶ 15    Defendant agreed with his attorney that he had been "in trouble in the past" on "a cannabis charge." He then agreed that "[t]hat really ha[d] nothing to do with this here though today."

¶ 16    On cross-examination, the prosecutor first asked defendant, "Isn't it true that [the cannabis charge] was a felony and you were convicted of that offense in April 2013, felony offense for cannabis?" Defendant responded, "I believe so."

¶ 17    Defendant's testimony on cross-examination continued as follows. When Davis held the door open, Katie fell over the steps. Defendant did not see which part of her body hit the steps first. Before Katie dropped off defendant, they had been drinking at a bar. He had not been angry at her for having another man in the car; McClain was his cousin, so there was no reason to be upset. Shown the photographs that the police had taken, defendant testified that he did not know how Katie had gotten the redness and injuries to her neck. When he was arrested, defendant told the officer that Katie had been drinking and driving.

¶ 18    On redirect examination, defendant's attorney returned to the "cannabis charge in 2013" and asked, "Again, that's over and done with, right?" Defendant agreed. Defendant then clarified that, although there were no steps in front of the door to Davis's house, a staircase to the side led to the second story; that was where Katie fell. When defendant saw Davis, he turned his head and asked Davis to open the door, losing his grip on Katie; she then fell.

¶ 19    In rebuttal, Mashaw testified that, when she saw the incident, the couple was "[n]ot very far at all" from entering the house. She did not see "any tender loving holding up" of the woman by the man. Mashaw was sure that she saw him choke the woman. She also saw him drag the woman.

¶ 20    Coplien testified that, when he met Katie, he noticed no signs of intoxication. The redness around her neck looked about 20 minutes old but diminished as they talked. The redness extended from approximately under one ear to approximately under the other ear.

¶ 21 Katie testified that, when she exited the car, defendant did not tell her that she was drunk or that she should not be driving. He did not wrap his arm around her waist and help her to the door. She did not fall on or near any steps. Defendant did not take her purse. After Katie got home, she called the police. Before the police arrived, she changed her clothes but did not wash. She had been drinking "a little bit" that night, but she had not been falling over.

¶ 22 In closing argument, the State noted that defendant's 2013 cannabis conviction could be considered as impeachment. The offense was "a crime of dishonesty against society" that went to whether defendant's testimony was credible. Neither party mentioned the conviction again. The jury found defendant guilty of domestic battery and not guilty of the other two charges. The court sentenced him to 30 months' imprisonment. He timely appealed.

¶ 23 On appeal, defendant contends that the trial court abused its discretion in allowing the State to impeach him with his cannabis conviction. Defendant notes that the trial court purportedly applied *Montgomery*'s balancing test but did not explain why the conviction was probative of defendant's testimonial credibility. Defendant also argues that the State's rationale for introducing the conviction—that the offense was "a crime against society"—was improper under the case law. For the following reasons, we cannot say that the trial court erred.

¶ 24 The trial court's admission of a prior conviction for impeachment will not be disturbed absent an abuse of discretion. *People v. Neely*, 2013 IL App (2d) 120043, ¶ 18. Under *Montgomery*, evidence of a prior conviction is admissible for impeachment if (1) the crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement regardless of the punishment; (2) less than 10 years has elapsed since the date of the conviction of the prior crime or the release of the witness from confinement, whichever was later; and (3) the probative value of admitting the prior conviction outweighs the danger of unfair prejudice. *People v. Mullins*, 242 Ill. 2d 1, 14 (2011); *Montgomery*, 47 Ill. 2d at 516. Here, defendant does not dispute that his cannabis-related felony conviction met the first two criteria. He contends, however, that post-*Montgomery* authority, including *Williams*, *People v. Siebert*, 72 Ill. App. 3d 895 (1979), and *O'Bryan v. Sandrock*, 276 Ill. App. 3d 194 (1995), militate against finding that a conviction of a drug-related felony not involving dishonesty or false statement can survive *Montgomery*'s balancing test.

¶ 25 We cannot accept defendant's reading of post-*Montgomery* authority. Since *Williams*, our supreme court has made clear that a conviction of a felony that does not directly involve dishonesty, such as the possession or delivery of a controlled substance, can still be admissible under *Montgomery*. Defendant's argument ignores several crucial opinions that undercut his characterization of supreme court (and appellate court) precedent in this area.

¶ 26 Before examining the progression of the case law since *Montgomery*, we note that the trial judge's failure to explain his decision in detail is not crucial. Indeed, a judge need not state explicitly that he is applying *Montgomery*'s balancing test. *Mullins*, 242 Ill. 2d at 16-17; *People v. Atkinson*, 186 Ill. 2d 450, 462-63 (1999). Here, the judge indisputably followed *Montgomery*, stating on the record that he was doing so (and that defendant's domestic battery conviction failed the test and would be excluded).

¶ 27 We turn to the pertinent case law. In balancing probative value against undue prejudice, a trial court should consider the nature of the crime, its nearness or remoteness, the defendant's subsequent criminal career, and whether the crime was similar to the one charged. *Montgomery*, 47 Ill. 2d at 518. In the wake of *Montgomery*, several courts had to decide whether drug-related felony convictions passed this test. Several others considered the

admission of convictions of other felonies that did not directly involve lying or false statements. Although a few pre-*Williams* opinions provide some support for defendant, the opinions postdating *Williams* are to the contrary.

¶ 28    In *People v. Ramey*, 70 Ill. App. 3d 327 (1979), an armed-robbery case, the appellate court held that the defendant's drug-possession convictions were proper impeachment because such offenses " 'indicate a disposition to place the advancement of individual self-interest ahead of principle or the interest of society' " (*id.* at 332 (quoting *People v. Nelson*, 31 Ill. App. 3d 934, 938 (1975))) and because "an individual who obtains such substances does so by dishonest and evasive means, since their possession was in violation of the law" (*id.*).

¶ 29    In *Siebert*, however, where the defendant was convicted of attempted murder and delivery of a controlled substance, the appellate court held that the trial court had erred in allowing the State to impeach him with a conviction of possession of marijuana for sale. In part, this was because "possession of marijuana for sale does not have a direct bearing on honesty." *Siebert*, 72 Ill. App. 3d at 903. The court rejected *Nelson*'s reasoning: "any crime indicates" a disposition to place one's self-interest ahead of principle or society's interest. *Id.*

¶ 30    In *People v. Spates*, 77 Ill. 2d 193 (1979), the supreme court stated, "There is at least as reasonable a relation between theft and testimonial deceit as there is between an unquestionably admissible conviction for a violent felony, such as voluntary manslaughter, which is presumed to so relate." *Id.* at 204. We note that, arguably, a violent felony is less probative of a defendant's dishonesty than a drug-related offense. In *People v. Tribett*, 98 Ill. App. 3d 663 (1981), which involved a prosecution for possession of heroin, the appellate court upheld the use, for impeachment, of a prior conviction of possessing heroin, explaining that a conviction of possessing or delivering controlled substances is probative of testimonial credibility. *Id.* at 675-76.

¶ 31    In *Williams*, the defendant was convicted of first degree murder, conspiracy to commit murder, and armed violence and was sentenced to death. *Williams*, 161 Ill. 2d at 13-14. Before the supreme court, he argued that the trial court had erred in allowing the State to impeach him with his prior conviction of voluntary manslaughter. The court warned that the case law since *Montgomery* showed "a regression toward allowing the State to introduce evidence of virtually all types of felony convictions for the purported reason of impeaching a testifying defendant." *Id.* at 38-39. In particular, admitting a felony conviction merely because it shows a disposition to place one's interests ahead of society's was inconsistent with *Montgomery*'s distinction between crimes that reflect on a defendant's truthfulness as a witness and those that do not. *Id.* at 39.

¶ 32    The court held that the trial court had erred in admitting the defendant's voluntary manslaughter conviction as substantive evidence of guilt instead of as impeachment. *Id.* at 40. But it also explained that the State had supplied no reason to believe that the prior conviction bore on his testimonial credibility. More was needed than that his crime showed "disrespect for societal order." *Id.* at 41. (The court did hold the error harmless. *Id.*) The court did not, however, set out a *per se* rule that certain categories of crime cannot be considered probative of testimonial credibility and thus must fail the *Montgomery* balancing test. Indeed, the court cautioned, it was not holding that under no circumstances would a conviction of voluntary manslaughter be admissible to impeach a testifying defendant. *Id.* We note that voluntary manslaughter does not necessarily involve dishonesty.

¶ 33    Defendant relies heavily on an opinion in a civil negligence case, *O'Bryan*, which in turn relied on *Housh v. Bowers*, 271 Ill. App. 3d 1004 (1995). In *Housh*, the appellate court held that the trial court had erred in allowing the defendant to impeach the plaintiff with his felony conviction of a drug offense. *Id.* at 1006. The isolated five-year-old crime had no appreciable probative value but was highly prejudicial: "society presumes that 'narcotics addicts are notorious liars' and that 'once a user or addict always a user or addict.' " *Id.* at 1007 (quoting *Baldwin v. Huffman Towing Co.*, 51 Ill. App. 3d 861, 864 (1977)). In *O'Bryan*, the court applied this reasoning to the plaintiff's felony conviction of possessing cocaine. *O'Bryan*, 276 Ill. App. 3d at 195, 197.

¶ 34    Defendant fails to recognize that the opinions on which he relies are no longer good law (assuming that they were correctly decided at the time). In *People v. Williams*, 173 Ill. 2d 48 (1996) (*Frank Williams*), the defendant was convicted of first-degree murder and two other violent felonies. *Id.* at 54. He argued that the trial court erred in allowing the State to impeach him with an aggravated battery conviction. The supreme court found no error. In so doing, it cautioned appellate courts not to overstate its holding in *Williams*.

¶ 35    The supreme court explained that *Williams* did not alter the three-pronged test of *Montgomery* but simply reminded courts that, before deciding whether to admit prior convictions for impeachment, they must apply "the critical balancing test." *Id.* at 82. Although the court noted that there was language in *Williams* indicating "that this court no longer approved of the common rationale that a witness' prior felony conviction may by itself evince disrespect for social order and therefore supply a proper basis for impeachment" (*id.*), *Montgomery* did not restrict the use of felony convictions for impeachment to "offenses that involve dishonesty or false statement" (*id.* at 83).

¶ 36    Although defendant ignores *Frank Williams*, that opinion is hard to reconcile with his theory that a conviction of an offense not involving dishonesty or false statement is *not* probative of testimonial credibility. Those opinions that have broadly characterized drug-related convictions as non-probative of testimonial credibility have not survived *Frank Williams*. As one court observed, "[a]ppellate decisions that indicate [that] the nature of the prior conviction must bear on the witness's truthfulness before it can be considered for use as impeachment are trumped by [*Frank*] *Williams*." *Stokes v. City of Chicago*, 333 Ill. App. 3d 272, 278-79 (2002).

¶ 37    It is debatable whether there was ever supreme court precedent for an essentially *per se* rule that convictions of certain felonies are improper impeachment. To the extent that there was, *Frank Williams* indeed "trumped" this authority and set a new precedent. And, since defendant relies on the reasoning of *Siebert*, *Housh*, and *O'Bryan*, the effect on his case is dispositive.

¶ 38    Moreover, in *Mullins* (which defendant does not mention until his reply brief), the supreme court poured cold water on the theory that convictions of drug-related felonies cannot ordinarily satisfy *Montgomery*. There, where the defendant was convicted of possessing a controlled substance with the intent to deliver, the supreme court held that the trial court did not abuse its discretion in admitting a prior felony drug conviction as impeachment. The court noted that, in a case where the defendant's credibility is central, a prior conviction can be crucially important to the jury. *Mullins*, 242 Ill. 2d at 16 (citing *Atkinson*, 186 Ill. 2d at 462). The court recognized that *Tribett* had noted that "Illinois courts had repeatedly held that a conviction [of] the unlawful possession or delivery of controlled substances is the type of

conviction which is probative of credibility and affords a basis for impeachment." *Id.* at 18 (citing *Tribett*, 98 Ill. App. 3d at 675-76).

¶ 39 In light of *Mullins*, defendant cannot successfully argue that the trial court abused its discretion in admitting his felony drug conviction as impeachment. *Montgomery*'s first two prongs were satisfied, and the only issue is whether the trial court abused its discretion in applying the third prong's balancing test. We cannot say that it did.

¶ 40 Under *Mullins*, defendant's cannabis conviction was probative of his testimonial credibility. Thus, he had to show that "the risk of unfair prejudice *substantially* outweigh[ed] the probative value of the conviction for impeachment purposes." (Emphasis in original.) *Stokes*, 333 Ill. App. 3d at 279. The conviction appears to have been no less probative of testimonial credibility than were the drug felonies at issue in *Mullins* and *Tribett*. Moreover, the conviction was recent, one year before the offenses for which he was on trial, and involved an offense dissimilar to those offenses. The State emphasized that the conviction was relevant to credibility only, and the jury was so instructed.

¶ 41 Defendant contends that here, unlike in *Mullins*, the trial judge did not perform the *Montgomery* balancing test. The assertion is inaccurate. As noted, under *Atkinson*, the trial judge was not required to explain each step leading to his conclusion that the conviction passed the test. Further, the trial judge stated not only that he had applied the test to both prior convictions but that he was excluding one as more prejudicial than probative. Defendant does not address *Mullins*' holding that prior convictions of drug felonies *are* probative of testimonial credibility—which effectively overruled the authority on which he relies in arguing otherwise.

¶ 42 For the foregoing reasons, the judgment of the circuit court of Stephenson County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 43 Affirmed.