2025 IL App (2d) 240344-U
No. 2-24-0344
Order filed September 22, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CF-1196 |
| SUWIT THONGJAREON, | ) ) ) | Honorable C. Thomas Hull III, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice McLaren concurred in the judgment.

**ORDER**

¶ 1   *Held*:  In defendant's trial for aggravated criminal sexual abuse, the trial court did not err by admitting defendant's prior conviction of unlawful restraint as impeachment evidence.  Moreover, any error was harmless given the evidence of guilt and the limiting instruction on prior convictions.

¶ 2   Defendant, Suwit Thongjareon,[1] appeals his conviction of aggravated criminal sexual

abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2018)).  He argues that the trial court improperly

_____

[1]In the record below, defendant's name is also spelled Thongjaroen.

admitted his prior conviction of unlawful restraint as impeachment evidence under *People v. Montgomery*, 47 Ill. 2d 510 (1971).

¶ 3                                    I. BACKGROUND

¶ 4     On September 8, 2021, the State charged defendant in case No. 21-CF-1196 with one count of aggravated criminal sexual abuse. The State alleged that, between May 26, 2020, and April 24, 2021, defendant placed his hand on the vagina of his stepdaughter, J.V., for the purpose of his sexual arousal.

¶ 5     On November 29, 2021, the State charged defendant in case No. 21-CF-1694 with unlawful restraint. The State alleged that, on or about August 10, 2021, defendant "prevented [E.R., his wife,] from leaving by grabbing, pulling, and/or using his body to keep [E.R.] in place."

¶ 6     The cases proceeded in parallel, with the State electing to try defendant first in case No. 21-CF-1694. After defendant was convicted in case No. 21-CF-1694, the State proceeded to trial in case No. 21-CF-1196.

¶ 7     Before trial, on September 27, 2023, the State filed two motions *in limine*. The first was a motion under section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2022)) to admit J.V.'s out-of-court statements to her mother, E.R.; her cousin, S.D.; her aunt, L.D.; and Kasandra Osorio, an investigator with the Kane County Child Advocacy Center (CAC). The trial court ruled that the statements to family members showed sufficient safeguards of reliability and were admissible. However, the court ruled that the statements to Osorio were not sufficiently reliable, because (1) J.V. repeatedly said that defendant touched her " 'inappropriately,' " a term not expected of a seven-year-old child, and (2) J.V. did not provide details about the touching.

¶ 8    The second motion *in limine* was brought under *Montgomery* and sought to admit defendant's unlawful restraint conviction in case No. 21-CF-1694 to impeach his credibility if he testified at trial. In particular, the State argued that the conviction met *Montgomery*'s three-part test because (1) the offense was punishable by imprisonment in excess of one year; (2) less than 10 years had elapsed since the date of the conviction; and (3) the probative value of admitting the conviction outweighed the danger of unfair prejudice.  See *Montgomery*, 47 Ill. 2d at 516, 519.

¶ 9    At the hearing, the State stood on its motion and made no additional argument.  Defense counsel began by noting that, under *Montgomery*, if "the jury is more likely to decide that the [prior] offense means that [defendant] is more likely to commit the [charged] offense, then [the prior conviction] shouldn't come in."  But "[i]f they're more likely to believe he's a liar because of the nature of the [prior] offense, then it should come in."  Based on these principles, counsel asked the trial court to exclude the conviction of unlawful restraint.  Counsel argued that unlawful restraint is a "quasi violent offense."  "It's not aggravated battery but certainly it does not sound particularly nonviolent to a jury."  According to counsel, "[u]nlike a retail theft, forgery, or some sort of crime in which the underlying criminal intent is a lie basis [*sic*] that makes it more likely [that defendant is] a liar," a prior unlawful restraint conviction will make it more likely in the jury's eyes that defendant committed the charged sex offense.  Counsel also noted that the unlawful restraint conviction was defendant's only prior conviction and that it was entered less than a year before the hearing.

¶ 10    The trial court granted the State's motion to admit the unlawful restraint conviction.  The court explained:

   "The Court has had an opportunity to consider the arguments, as well as the case law of
       *Montgomery* and the cases that follow.  The unlawful restraint is a Class 4 felony.  So

[defendant's] crime [is] punishable in excess of one year. Number two, it's a 2021 case. So it's very recent and within the ten-year period.

So then the [c]ourt must conduct a balance [*sic*] test and find whether or not the probative value of admitting the prior conviction outweighs the danger of unfair prejudice. The unlawful restraint is not a similar type of offense to the aggravated criminal sexual abuse. The case law does establish that a felony conviction that does not involve dishonesty still could go towards demonstrating that a person is unwilling—or strike that.

In conducting the balancing test, I find that the probative value of admitting the prior conviction outweighs the danger of the unfair prejudice. There's a jury instruction that instructs the jurors to consider it for credibility purposes. And so if the defendant testifies, he will be allowed to be impeached with the prior conviction."

¶ 11   At trial, J.V., age 10, testified first. She testified that defendant had lived with her and E.R. in an apartment. On one occasion, when she was seven years old, defendant touched her "inappropriately" under her clothes on her "private area" where she goes "[p]ee." J.V. stated that defendant's hand was "[m]aking movements" as he touched her, and she demonstrated the movements for the jury. J.V. testified that the touching occurred when she was on the bed in E.R.'s bedroom. At the time, J.V. was using her tablet for a class, and the camera and microphone were turned off. J.V. testified that the touching made her uncomfortable and that defendant told her not to say anything about the touching. J.V. was asked, "After he touched you, can you—do you remember how it stopped?" J.V. replied no.

¶ 12   On cross-examination, J.V. testified that she told S.D. at a sleepover that defendant "had tried to touch [her] or look at [her] private part." Thereafter, J.V. told E.R. that defendant "was

trying" to touch her inappropriately. J.V. acknowledged that, "[e]arlier, [she] testified [she] didn't remember how it happened."[2]

¶ 13     S.D. testified that, on April 24, 2021, J.V. slept over at her house. J.V. was then seven years old. While they were in S.D.'s bedroom, J.V. told S.D. that defendant had "tried to touch her" while she was in her underwear. J.V. told S.D. that she got scared, ran into the bathroom, locked the door, and cried. S.D. then relayed this information to her mother, L.D.

¶ 14     L.D. testified that, on April 24, 2021, J.V. slept over at her house. J.V. told L.D. that she did not want to go home.

¶ 15     E.R. testified that, on April 24, 2021, J.V. went to L.D.'s house for a sleepover. That night, L.D. called E.R. In response, E.R. went to L.D.'s house to speak with J.V. because she was afraid to come home. J.V. told E.R. that defendant "had tried to touch her vagina over her underwear." J.V. reported that she told defendant to stop, pushed him away, and ran to the bathroom.

¶ 16     E.R. further testified that she married defendant in 2019 and that they had a son together. In April 2024, E.R. worked during the day while defendant stayed home with J.V. and their son. After the alleged incident, E.R. filed for divorce and separated from defendant.

¶ 17     After the State rested, defendant testified that he worked in the evenings at a sushi restaurant and stayed home with his son and J.V. while E.R. worked during the day. Defendant denied ever touching J.V. inappropriately. He thought of her as his own daughter and "treat[ed] her" that way. Defendant further denied ever doing anything to make J.V. uncomfortable. Defendant was currently separated from E.R., who had filed for divorce.

---

[2]It is unclear which portion of J.V.'s testimony was referenced here. The closest such testimony was J.V.'s statement that she did not recall how the touching "stopped."

¶ 18 After the defense rested, the trial court asked the State whether it wished to present rebuttal evidence. In the presence of the jury, the State sought to enter People's exhibit No. 4, a "self-authenticating document," namely "a certified conviction for unlawful restraint, a felony conviction." When asked if there was an objection, defense counsel answered, "The same made at pretrial." The court overruled the objection and admitted the exhibit, which consisted of the charging instruments and sentencing order in case No. 21-CF-1694. However, the exhibit was not sent back to the jury.

¶ 19 Among the jury instructions, the court gave the following:

"Evidence of a defendant's previous conviction of an offense may be considered by you only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged."

¶ 20 During deliberations, the jury submitted a question to the trial court: " 'What was the nature of the previous felony?' " When the court asked the State for a suggested response, the State noted that it had "read into the record that it was an unlawful restraint." The State did not want the jury to have the certified conviction, but the State "[did not] see a problem with actually just putting that it was an unlawful restraint."

¶ 21 Defense counsel responded:

"And my concern is that's exactly what they should not be using is the nature of the offense to determine whether or not he committed this offense.

And so I would redirect them to the jury instruction that addresses that; that the only thing they should be considering [it] for is whether or not he can be trusted. Because, otherwise, they're impugning the nature of the offense to whether or not he's guilty."

¶ 22    The trial court noted that the prior offense was stated on the record and that, under the law, the jury "[should not] consider the nature [of the offense]." The court decided to submit an answer to the jury that reiterated the jury instruction on prior convictions, with the additional admonition that "the nature of the previous felony conviction is not relevant."

¶ 23    The jury found defendant guilty of aggravated criminal sexual abuse. Defendant filed a posttrial motion, arguing, *inter alia*, that the trial court erred in admitting the unlawful restraint conviction as impeachment evidence. The trial court denied the motion and sentenced defendant to 30 months' probation, also requiring him to register as a sex offender. Defendant's subsequent motion to reconsider sentence was denied, and this timely appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25    At issue in this appeal is whether the trial court properly admitted impeachment evidence of defendant's prior conviction of unlawful restraint in his trial for aggravated criminal sexual abuse.

¶ 26    Evidentiary rulings are within the sound discretion of the trial court and will not be reversed unless the trial court has abused that discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). Further, an abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.*

        "In *Montgomery*, [the supreme] court held that evidence of a witness' prior

        conviction is admissible to attack the witness' credibility where: (1) the prior crime was

        punishable by death or imprisonment in excess of one year, or involved dishonesty or false

        statement regardless of the punishment; (2) less than 10 years has elapsed since the date of

        conviction of the prior crime or release of the witness from confinement, whichever is later;

        and (3) the probative value of admitting the prior conviction outweighs the danger of unfair

prejudice." *People v. Mullins*, 242 Ill. 2d 1, 14 (2011) (citing *Montgomery*, 47 Ill. 2d at 516).

¶ 27 Illinois Rule of Evidence 609(a), (b) (eff. Jan. 1, 2011) codifies the *Montgomery* test:

"(a) *General Rule*. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the court determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.

(b) *Time Limit*. Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date."

¶ 28 *Montgomery*'s third prong "requires a trial judge to conduct a balancing test, weighing the prior conviction's probative value against its potential prejudice." *Mullins*, 242 Ill. 2d at 14. In so doing, "the trial court should consider, *inter alia*, the nature of the prior conviction, the nearness or remoteness of that crime to the present charge, the subsequent career of the person, the length of the witness' criminal record, and whether the crime was similar to the one charged." *Id.* at 14-15.

¶ 29 Defendant argues that the trial court's decision to admit the unlawful restraint conviction under *Montgomery* was erroneous because (1) the State made no argument as to how the conviction was probative, either in its motion *in limine* or during the hearing, despite the State's burden to do so, and (2) the trial court failed to perform the *Montgomery* balancing test.

¶ 30    On his first point, defendant relies on *People v. McKay*, 279 Ill. App. 3d 195 (1996), to suggest that the trial court's decision here was erroneous because the State never articulated a connection between the unlawful restraint conviction—obviously not a crime of deception—and defendant's testimonial truthfulness. See *id.* at 205 ("Here, the State has failed to provide an explanation *** of the relationship between [the] defendant's prior conviction for aggravated battery and his testimonial credibility."). Defendant misunderstands the burdens of persuasion under *Montgomery*. In seeking admission of a prior conviction under *Montgomery*, the State bears the burden to satisfy the first two prongs of the *Montgomery* test, *i.e.*, that

> "(1) the prior crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement regardless of the punishment; [and] (2) less than 10 years has elapsed since the date of conviction of the prior crime or release of the witness from confinement, whichever is later" (*Mullins*, 242 Ill. 2d at 14). See *People v. Yost*, 78 Ill. 2d 292, 297 (1980).

However, once the State meets these requirements, the burden shifts to the defendant to establish under *Montgomery*'s third prong that the danger of unfair prejudice outweighs the probative value of the prior conviction. See *People v. Bryant*, 94 Ill. 2d 514, 524 (1983); *People v. Medreno*, 99 Ill. App. 3d 449, 451 (1981). Here, the connection between the unlawful restraint conviction and defendant's testimonial truthfulness was a matter for *Montgomery*'s third prong, on which defendant—not the State—bore the burden of persuasion. To extent *McKay* suggests otherwise, we decline to follow it.

¶ 31    On his second point, defendant argues that, "[i]nstead of balancing the probative value against the risk of unfair prejudice, the [trial] court mechanically applied the test set out in *Montgomery*." According to defendant, the court employed a "truncated analysis" by "stopp[ing]

the balancing test after concluding that unlawful restraint was not a similar type of offense to aggravated criminal sexual abuse." Defendant recognizes that we must "presume the circuit court knows, follows, and applies the law unless the record affirmatively rebuts that presumption." *People v. Brown*, 2024 IL App (2d) 230489, ¶ 17. However, he contends that "the fact that the judge in this case mentioned the *Montgomery* test, articulated some factors but then concluded his analysis prematurely belies the presumption that he applied the *Montgomery* test appropriately."

¶ 32   Defendant misunderstands what manner of "affirmative showing" is needed to rebut the presumption that the trial court properly applied *Montgomery*'s balancing test. We have observed that a trial court's "failure to explain his decision [under *Montgomery*] in detail is not crucial." *People v. Garner*, 2017 IL App (2d) 150045, ¶ 26. "Indeed, a judge need not state explicitly that he is applying *Montgomery*'s balancing test." *Id.* In *Garner*, the trial court admitted the defendant's prior drug conviction under *Montgomery*, concluding that the "conviction's probative value as impeachment outweighed its potential for undue prejudice." *Id.* ¶ 3. The court did not specify the reasons for its conclusion under the balancing test. We rejected the defendant's argument that the court did not perform the balancing test; we explained that the court "was not required to explain each step leading to [its] conclusion that the conviction passed the test," and we noted that the court not only said it was balancing the probative value of the drug conviction against the potential for undue prejudice, but the court also excluded under *Montgomery* a second conviction the State sought to offer as impeachment. *Id.* ¶ 41.

¶ 33   In *Garner*, we relied on *Mullins* and *People v. Atkinson*, 186 Ill. 2d 450, 462 (1999), for the proposition that the trial court need not specify the reasons for its conclusion under the *Montgomery* balancing test. *Garner*, 2017 IL App (2d) 150045, ¶ 26. In *Atkinson*, the supreme court held that the trial court "did not err in failing to articulate the factors [it] considered in [its]

application of the *Montgomery* balancing test," because the court's comments showed that it "recognized that [it] had to determine whether the probative value of the evidence outweighed its prejudice." *Atkinson*, 186 Ill. 2d at 462-63. In *Mullins*, the trial court admitted a prior conviction under *Montgomery* without "specifically stat[ing] that it was balancing the factors pursuant to *Montgomery*." *Mullins*, 242 Ill. 2d at 18. Nonetheless, the supreme court disagreed with the defendant that the trial court "fail[ed] to perform the *Montgomery* balancing test." *Id.* at 17. The court noted that it had "declined to find error under similar circumstances when the transcript ma[de] it clear that the [trial] court was applying the *Montgomery* standard, even though it was not expressly articulated." *Id.* at 18 (citing *People v. Williams*, 173 Ill. 2d 48, 83 (1996) ("Contrary to the defendant's argument, there is no reason to suppose that the trial judge failed to weigh the probative value of the impeachment against its possible prejudicial effect. A review of the transcript shows that the judge was fully aware of the *Montgomery* standard and the balancing test it requires. The parties referred to the balancing test in their arguments to the judge on the question whether the defendant could be impeached with the earlier conviction.")).

¶ 34    Here, when ruling on the State's motion *in limine*, the trial court began by recounting that it had reviewed the parties' arguments, the *Montgomery* decision, and the cases following *Montgomery*. The court noted that the unlawful restraint conviction met the first two *Montgomery* requirements because the offense was punishable by imprisonment in excess of one year and the conviction was less than 10 years old. The court then acknowledged that it was required to conduct "a balance [*sic*] test and find whether or not the probative value of admitting the prior conviction outweigh[ed] the danger of unfair prejudice." The court, "[i]n conducting the balancing test, *** [found] that the probative value of admitting the prior conviction outweigh[ed] the danger of the unfair prejudice." Thus, the trial court not only recognized the balancing test but also expressly

reached a conclusion under that test. Under *Mullins*, *Atkinson*, and the other cited cases, we deem the court to have performed the test, even though it specified no reasons for its conclusion.

¶ 35    Defendant's arguments in favor of finding error are not convincing. First, the trial court did not "stop" the balancing test upon noting that the prior offense was unlike the charged offense. Rather, by its own terms, the trial court performed the balancing and concluded that the conviction should be admitted.

¶ 36    Second, the authorities upon which defendant relies are not persuasive. Defendant cites *People v. Williams*, 161 Ill. 2d 1 (1994) (*Eddie Williams*), to suggest that "a mechanical application of the *Montgomery* test is an abuse of discretion." The supreme court in *Eddie Williams* criticized what it saw as "a regression toward allowing the State to introduce evidence of virtually all types of felony convictions for the purported reason of impeaching a testifying defendant." *Id.* at 38-39. The court warned against the "increasingly mechanical application of" the *Montgomery* test. *Id.* at 39. However, later, in *Willliams*, the court clarified that *Eddie Williams* "[did] not alter the three-prong rule set forth in *Montgomery*." *Williams*, 173 Ill. 2d at 82. Rather, *Eddie Williams* was "concerned with the lack of emphasis lower courts had placed on the third prong of the *Montgomery* rule, that is, the balancing test." *Id.* at 81. *Eddie Williams* merely "emphasized the importance of conducting the balancing test of probative value versus unfair prejudice before admitting prior convictions for impeachment purposes." *Id.* at 81-82. Notably, the supreme court in *Williams* refused to conclude that the trial court failed to apply *Montgomery*'s balancing test simply because the trial court "did not expressly articulate" that it was applying the test. *Id.* at 83. It sufficed for the *Williams* court that the record showed that the trial court "was fully aware of the *Montomgery* standard and the balancing test it requires." *Id.* In light of this clarification of *Eddie Williams*, we cannot conclude that the trial court here engaged in a "mechanical" application of

*Montgomery*'s balancing test simply because the court did not specify the reasons for its conclusion under that test.

¶ 37    Defendant cites *People v. McGee*, 286 Ill. App. 3d 786 (1997), to suggest that the trial court's *Montgomery* ruling was erroneous because the court did not complete the balancing test. The trial court in *McGee* evidently made no reference to the balancing test when it denied the defendant's motion to exclude his prior convictions. *Id.* at 793. Here, as explained, the trial court acknowledged the balancing test and indicated its conclusion under the test—thus satisfying *Montgomery* as construed in *Mullins* and *Atkinson*. Therefore, *McGee* is distinguishable. Moreover, to the extent that *McGee* may be read to support defendant's argument, we decline to follow it in light of *Mullins* and *Atkinson*.

¶ 38    We conclude that the trial court properly applied the *Montgomery* balancing test in admitting the unlawful restraint conviction for impeachment purposes. Therefore, we find no error in the admission of the conviction.

¶ 39    Further, even if the trial court erred by admitting the unlawful restraint conviction as impeachment evidence under *Montgomery*, such error was harmless. "An evidentiary error is harmless where there is no reasonable probability that the jury would have acquitted the defendant absent the error." (Emphases omitted and internal quotation marks omitted.) *People v. Pinkett*, 2023 IL 127223, ¶ 39. "Harmless-error analysis is based on the notion that a defendant's interest in an error-free trial must be balanced against societal interests in finality and judicial economy." (Internal quotation marks omitted.) *Mullins*, 242 Ill. 2d at 23. When determining whether an error is harmless, a reviewing court may "(1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly

admitted evidence is merely cumulative or duplicates properly admitted evidence." *In re Rolandis G.*, 232 Ill. 2d 13, 43 (2008). To determine whether the trial's outcome would have been different without the error, we review the proceedings as a whole and examine the entire record. *Mullins*, 242 Ill. 2d at 23. The State bears the burden of establishing harmless error. *People v. Thurow*, 203 Ill. 2d 352, 363 (2003).

¶ 40 We find that any error in admitting the unlawful restraint conviction was harmless. First, there were safeguards to minimize the impact of the prior conviction. As the State points out, defendant was aware before trial that the unlawful restraint conviction would be admitted, giving him sufficient time to decide whether to testify and prepare a defense. Indeed, case law is clear that defendants benefit from pretrial rulings on the admissibility of their prior convictions. See *People v. Patrick*, 233 Ill. 2d 62, 70 (2009). Early rulings not only provide defendants with the information necessary to make the critical decision of whether to testify on their own behalf and to gauge the strength of their testimony, but such rulings also permit defendants and defense counsel to make reasoned tactical decisions in planning the defense. *Id.*

¶ 41 Another procedural safeguard was the jury instruction on prior convictions. After the parties rested, the trial court instructed the jury that it could consider the prior conviction only as it bore upon defendant's credibility at trial and not as evidence of his guilt of the charged offense. Such an instruction (which we presume the jury followed (see *People v. Glasper*, 234 Ill. 2d 173, 201 (2009)) is a factor in weighing the impact of improperly admitted prior convictions. See *People v. Washington*, 127 Ill. App. 3d 365, 384 (1984) (improper admission of prior convictions was harmless where the jury was instructed that the convictions were admitted only on the issue of the defendant's credibility). During deliberations, the jury asked about the nature of the prior offense. Defendant argues that the jury's question suggested that it was speculating about the prior

offense and considering it as propensity evidence. Defendant is himself speculating; the jury might well have been following the instruction and trying to determine if the prior offense involved dishonesty, making it more directly pertinent to defendant's credibility. In response to the jury, the trial court reiterated the instruction on prior convictions and added that the nature of the prior felony was not relevant. See *People v. Hudson*, 2023 IL App (1st) 192519, ¶ 60 ("The trial court has a duty to answer jury questions requesting clarification on points of law. [Citation.] At the same time, the trial court has discretion to decline to answer the jury's question in some circumstances [citation], [and] any answer it gives should be specific and accurate."). Again, we presume that the jury followed the reiterated instruction as modified. See *Glasper*, 234 Ill. 2d at 201.

¶ 42 Second, and most importantly, there was sufficient evidence, apart from the prior conviction, to sustain the conviction of aggravated criminal sexual abuse. Defendant characterizes the trial as a "he-said, she-said" contest, but "the testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant" (*People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009)). "The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts." *People v. Perez*, 2025 IL App (2d) 240360, ¶ 15. "A reviewing court will not reverse a conviction simply because the evidence is contradictory [citation] or because the defendant claims that a witness was not credible." *Siguenza-Brito*, 235 Ill. 2d at 228. J.V.'s account at trial was unequivocal: defendant touched her under her clothes on her private area. She demonstrated how his hand was moving when he touched her. J.V.'s mother (E.R.), cousin (S.D.), and aunt (L.D.) each provided at least partial corroboration. E.R. and S.D. testified that J.V. reported that

defendant tried to improperly touch her, and E.R. and L.D. testified that J.V. said she did not want to come home from the sleepover at L.D.'s house (E.R. added that J.V. was afraid to come home).

¶ 43    Citing E.R.'s and S.D.'s testimonies, defendant argues that J.V.'s account "changed significantly over time, and she was impeached at trial with her prior inconsistent statements." Specifically, E.R. and S.D. testified that J.V. told them that defendant "tried" to touch her, but J.V. testified at trial that defendant *actually* touched her. However, the jury could consider such discrepancies and still reasonably find that the evidence was sufficient for a guilty verdict.

¶ 44    Defendant also highlights J.V.'s use of "inappropriately" to describe defendant's touching. Defendant notes that the trial court denied the State's section 115-10 motion to admit J.V.'s statements at the CAC several weeks after the incident. The court ruled as such because, *inter alia*, " 'inappropriately' " was not a term commonly used by a seven-year-old. However, *at trial*, the jury had the prerogative of judging whether J.V.'s use of "inappropriately" was cause for rejecting her testimony. Given the other indicia of reliability in J.V.'s testimony, we cannot say that the jury could not reasonably accept her testimony despite that usage.

¶ 45    For these reasons, we hold that the State has met its burden of showing that any error in admitting the unlawful restraint conviction was harmless.

¶ 46                                    III. CONCLUSION

¶ 47    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 48    Affirmed.